## General Refractories Co. v. Swetman.
### November 26, 1946.

Thomas D. Theobald and John M. Theobald for appellant.
Lester Hogge for appellee.

OPINION OF THE COURT BY JUDGE SILER—Reversing.

This was an action by John W. Swetman, appellee, owner of surface rights on a boundary of land, against General Refractories Company, appellant, owner of fire clay rights beneath the same land, seeking property damages for injury done to springs of water and to a road as a result of mining operations.

Appellant prosecutes this appeal from a judgment against it for $800 in damages.

The first ground of reversal relied upon by appellant is its contention that the trial court should have directed a verdict in appellant's favor at the conclusion of appellee's evidence.

The fire clay rights under the land in question were conveyed to appellant in 1917. The surface rights upon the same land were conveyed to appellee in 1928. The mining of the fire clay underneath this land was begun by appellant in 1941. In the course of its mining operations, the appellant made several refuse dumps over steep embankments near the mine openings. These refuse dumps covered and substantially destroyed two springs of water located down the sides of these embankments and upon the face of land surface owned by appellee. Also, in the course of its mining operations, the appellant took the clay underneath an unimproved county road running by or through this land, thereby rendering that part of the road unsuitable for travel. The appellant constructed, in substitution for the obliterated road strip, another road high on an embankment on the subject land, and partly covered it with a rock surface but left it very steep in its approach. The appellee sued for the damages caused to his surface rights by the covering of his two springs and by the changing of the road. The evidence shows that no one lives upon this land, the appellee being a resident of West Virginia; that the area occupied by appellant's dumps and the area of the substitute roadway constitute about three or four acres; that the area of the dumps is very rugged and practical-

ly untillable; that the entire tax assessment value of appellee's land, consisting of 265 acres altogether, was only $600; that the market value of appellee's land, as established only by his own testimony, was $4500 before appellant's acts and was $4,000 thereafter, in each instance of appellee's alleged injuries.

The appellant pled, in justification of its right to dump its mining refuse on these two surface springs and to change the roadway in question, the following contractual provision contained in its title papers of 1917: "Together with all the necessary rights of way over, under and upon the aforesaid land for tram roads, or other roads to remove said minerals from said land, or for hauling other minerals it may desire to haul over same; and the right to cut down and use black oak standing timber measuring 10 inches or less for mining or tram-road purposes; and together with the right to take said mineral from said land in whatever manner it may decide is most convenient or economical."

In order for appellee to recover against appellant in a case of this kind, it is obviously necessary for him to allege by sufficient pleadings and to prove by substantial evidence that he owns the surface property rights of this land; that such property rights have been injured by this appellant with resulting damages to appellee; that the appellant's mining rights, which were substantially conterminous with appellee's property rights and which were set out by appellant's amended answer, were used by appellant in such a manner as to be detrimental to appellee's own property rights, although appellant could have, reasonably, economically and conveniently, engaged in its mining operations in a different manner which would not have been detrimental to appellee's own property rights nor caused any damage thereto. The appellee did not plead in this respect, neither did he deny the allegations of appellant's amended answer. There is no evidence whatever in the record tending to show that appellant could have avoided this dumping of refuse upon appellee's springs by locating other dumping sites nearby. Neither was there a serious attempt made to prove that appellant could have avoided this change of the roadway by pursuing some other reasonable and more legitimate course of action in its operations. Of course, the appellant had no right to infringe *arbitrarily*

upon appellee's surface rights, even though appellant's contract did give it a wide discretion in choosing the most convenient and economical operational method of mining. If appellee will plead and thereafter will prove that appellant acted arbitrarily and unreasonably in doing the things that resulted in his damage, then he may present a good cause of action upon a second trial of this case. Otherwise, he will not have a legal cause of action.

A surface owner has the right to enjoy his lands free from annoyance, except such as may reasonably arise from the opening, exploration, mining and marketing of the minerals that have been granted to another. Imperial Elkhorn Coal Co. v. Webb, 190 Ky. 41, 225 S. W. 1077. That word "reasonable" should be noted, since a case of this kind must stand or fall upon the unreasonable nature, both pled and proven, of the mining operations which were followed to the damage of the surface owner.

In 36 American Jurisprudence at page 400, we find the following pronouncement as to the relative rights between surface owners and mineral owners in the same land: "The owner of the surface of the land and the owner of the minerals when they are severed from the surface estate have separate and distinct titles. With the ownership of these separate estates go rights of use and enjoyment which are in a sense relative and which should be exercised by each owner with due regard to the rights of the other owner. So far as it is possible, these respective rights should be adjusted to each other, so as to conduce to the full enjoyment of the property. The surface owner may use and deal with his property in any legitimate manner not inconsistent with the rights acquired by the owner of the minerals; and as will be seen, the owner of the minerals has a limited right to use the surface in reaching and removing the minerals."

The rights of this appellant must be used and exercised with full regard to the rights of this appellee, and vice versa. If appellant, in locating its dumps and in changing this roadway, has been arbitrary because it could have reasonably conducted its mining operations in a different manner, then this appellee has a good cause of action, provided of course that he pleads and proves his theory according to this tenor.

While we are not now deciding the question of whether appellee's damages were excessive, the observation is not untimely that damages of $800 awarded for some resulting injuries to land, which land was assessed at only $600 in its entirety for taxation purposes, presents a stark inconsistency. And this was, to say the least, incongruous on its unpleasant countenance.

Wherefore, the judgment is reversed for proceedings consistent herewith.