RENDERED: APRIL 26, 2018
TO BE PUBLISHED

Supreme Court of Kentucky

2016-SC-000561-DG

FINAL

DATE 5/17/18 Kim Redmon, DC

BIG SANDY COMPANY, L.P.          APPELLANT

V.

ON REVIEW FROM COURT OF APPEALS
CASE NO. 2015-CA-000490
PIKE CIRCUIT COURT NO. 13-CI-00617

EQT GATHERING, LLC and          APPELLEES
EQT PRODUCTION COMPANY

## OPINION OF THE COURT BY JUSTICE KELLER

### REVERSING

The Pike Circuit Court entered a declaratory judgment in favor of Big Sandy Company, LP (Big Sandy), interpreting a pipeline easement agreement in Big Sandy's favor. EQT Gathering, LLC and EQT Production Company (collectively, EQT) appealed, and the Court of Appeals reversed. Big Sandy petitioned this Court for discretionary review, which we granted. After careful review, we reverse the Court of Appeals.

### I. BACKGROUND

The majority of the facts are undisputed. On August 1, 2003, Big Sandy entered into a Pipeline Easement Agreement (the Agreement) with Kentucky West Virginia Gas Company, LLC (KWVA). KWVA is EQT's predecessor in

interest. In the Agreement, Big Sandy granted KWVA an easement for the construction, operation, and maintenance of a pipeline. The parties refer to the pipeline covered by the Agreement as the "Myra Pipeline." The Agreement was negotiated by a representative for Big Sandy, Chauncey Curtz, and a representative of KWVA, Lester Zitkus. The parties negotiated the Agreement from 1999 until the Agreement was signed.

The Agreement granted KWVA[1] and its successors-in-interest "a non-exclusive sixty foot wide temporary easement for initial construction, and a non-exclusive thirty foot wide right of way and easement" for:

> A pipeline twelve inches or less in diameter, for the transportation of natural gas (the Pipeline) over, through, and across certain surface tracts and mineral tracts of Big Sandy situated on the waters of the Elkhorn Creek in Pike County, Kentucky, the centerline of which is as shown on the color print attached hereto and made a part hereof and marked as Exhibit "A."

Exhibit A is a map showing where the pipeline crosses Big Sandy's surface and mineral tracts. The map indicates which portions of the pipeline were already in the ground and also indicated the location of the proposed route for new pipe.

The Agreement provides that if Big Sandy decides to mine in the vicinity of an area covered by the easement and the Agreement, EQT must either purchase the minerals underlying the pipeline or, if EQT does not want to purchase the minerals, it must remove and relocate the pipeline at its own expense.

---

[1] For the remainder of the opinion, we will refer to the Agreement as being between Big Sandy and EQT, as EQT obtained its interest from KWVA.

2

Big Sandy desires to mine on three tracts, tracts 1, 2, and 3 (subject tracts), on the map. On these subject tracts, Big Sandy holds only a mineral estate, not a surface estate. Also, on these subject tracts, the map shows that pipe was already located in the ground before the Agreement became effective. EQT argued the Agreement only applied to those tracts that referenced "proposed pipeline routes," excluding the tracts where the pipe was already in the ground prior to the Agreement. If this interpretation was correct, it would mean that the Agreement does not apply to the subject tracts that Big Sandy intends to mine. If the Agreement is not applicable, Big Sandy would be liable for the cost of removing and relocating the pipeline if it did, in fact, commence mining in these locations. Big Sandy of course maintains that the Agreement applies to all tracts depicted on the map.

EQT filed suit against Big Sandy requesting declaratory relief regarding the interpretation and scope of the Agreement. Big Sandy filed its answer and counterclaims for breach of contract, declaratory relief, and tortious interference with prospective advantage. EQT then filed an amended complaint adding a claim for reimbursement for costs incurred. The parties each then filed motions for partial summary judgment. The trial court held a hearing, ruling only on the interpretation of the Agreement.

The trial court agreed with Big Sandy that the Agreement applied to all tracts depicted on the map, finding there was no language in the Agreement or on the map that indicated the parties' intent to exclude specific tracts from the scope of the Agreement. Therefore, according to the trial court, the Agreement

3

was unambiguous, and because the map was incorporated and made part of the Agreement, Big Sandy's interpretation prevailed.

EQT appealed. Although also finding the Agreement to be unambiguous, the Court of Appeals reversed. Relying on four paragraphs (5, 7, 10, and 14), the Court of Appeals held that Big Sandy's interpretation would be absurd and render much of the Agreement meaningless. Judge Thompson dissented and would have affirmed the trial court. Big Sandy petitioned this Court for discretionary review. After a thorough review of the record, we now reverse the Court of Appeals.

## II. STANDARD OF REVIEW

In a declaratory action, findings of fact are reviewed under a clearly erroneous standard, and conclusions of law are reviewed *de novo*. *Baze v. Rees*, 217 S.W.3d 207, 210 (Ky. 2006) "The interpretation of a contract including determining whether a contract is ambiguous, is a question of law to be determined *de novo* on appellate review. *Kentucky Shakespeare Festival, Inc. v. Dunaway*, 490 S.W.3d 691, 695 (Ky. 2016) (internal citations omitted).

## III. ANALYSIS

### A. The Agreement is unambiguous and applies to the subject tracts.

"In interpreting a contract, we first determine as a matter of law whether the contract is ambiguous. A contract written in clear and unambiguous language is not subject to interpretation or construction and must be enforced according to its terms." *Board of Trustees of Kentucky School Boards Insurance Trust v. Pope*, 528 S.W.3d 901, 906 (Ky. 2017) (citing *New York Life Ins. Co. v.*

4

*Conrad*, 107 S.W.2d 248, 250-51 (Ky. 1937)). A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations. *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. App. 2002) (internal citations omitted).

We agree with both the trial court and Court of Appeals that the Agreement is unambiguous; and furthermore, as a matter of law, we hold the Agreement clearly applies to the subject tracts.

Paragraph 1 of the Agreement states as follows:

Big Sandy hereby grants and conveys unto KWVA, . . . a non-exclusive sixty foot (60') wide temporary easement for initial construction, and a non-exclusive thirty foot (30') wide right of way and easement (the Easement) for a pipeline twelve inches (12") or less in diameter, for the transportation of natural gas (the Pipeline) over, through and across certain Surface Tracts and Mineral Tracts of Big Sandy . . . .

EQT's argument, that the Agreement only applies to tracts in which Big Sandy owns both a surface and mineral estate, or in the alternative, only those tracts in which pipe was not already in the ground at the time of executing the Agreement, is refuted by the language of Paragraph 1. The Agreement clearly states that the grant of the pipeline is over, through and across certain Surface Tracts *and* Mineral Tracts.

Additionally, Paragraph 1 is the only provision of the Agreement that remotely distinguishes pipe already in the ground and the proposed route of new pipe. Paragraph 1 grants an initial temporary easement for construction of the pipeline. However, the easement granted for the transportation of natural gas across Big Sandy's tracts was not a temporary easement like that

5

for the initial construction. Once the initial construction was completed, the thirty foot wide easement applied to the entire pipeline.

Further, the parties agree that the pipeline referenced in Paragraph 1 is the "Myra Pipeline" that is depicted on the map attached to and incorporated into the Agreement. The Myra Pipeline and the map include both Big Sandy's surface and mineral estates as well as those tracts in which pipe was already in the ground and tracts where the pipeline was proposed.

"Any contract or agreement must be construed as a whole, giving effect to all parts and every word in it if possible." *City of Louisa v. Newland*, 705 S.W.2d 916, 919 (Ky. 1986). "The legal interpretation of a contract should be made in such a way as to make the promises mutually binding on all parties unless such a construction is wholly negated by the language used." *Id.* Aside from Paragraph 1, which evidences the Agreement applies to the subject tracts, ample support is found in the remainder of the Agreement.

> There is expressly excepted from the foregoing grant and demise, and **reserved unto Big Sandy**, its successors, assigns and lessees: (i) subject to the provisions of Paragraph 9 below, **the right to utilize the surface of the lands effected [sic] by the Easement for any and all purposes** including but not limited to, the construction of spur tracks, mine tracks, fills, inclines, power lines, telegraph and telephone lines upon, over, through, across or above the same; and (ii) subject to the provisions of Paragraphs 7 and 9 below, the right to mine, remove, develop, prospect for, and explore for any coal, other mineral or other strata underlying the Easement without liability for any damage which may accrue to said Easement or to the Pipeline . . . . **Subject to the provisions of Paragraphs 7 and 9 below, it is expressly acknowledged and agreed by KWVA that Big Sandy or its lessees are allowed to remove one hundred percent (100%) of the coal under the Pipeline, and that controlled subsidence of the ground surface is planned.**

6

Paragraph 5 (emphasis added).

We find Paragraph 5 very persuasive. The emphasized portion above gives Big Sandy the right to utilize the surface of tracts affected by the easement. It is undisputable that the easement affects all of the tracts depicted on the map. Moreover, the last clause of Paragraph 5 gives Big Sandy the right to remove all of the coal under the pipeline, making no distinction between the pipe in ground and the proposed pipe route. If the Agreement did not apply to the subject tracts, Big Sandy would not have had access to those tracts to mine the coal. "Of what value is a mineral if it cannot be mined? The surface owner has no right in the minerals; the mineral estate is therefore considered to be the dominant estate, and the surface estate is the servient one." *Kentucky Southern Coal Corp. v. Kentucky Energy and Environment Cabinet*, 396 S.W.3d 804, 813 (Ky. 2013) (Scott, J., dissenting) (quoting *Akers v. Baldwin*, 736 S.W.2d 294, 297 (Ky. 1987)).

Paragraph 7 discusses EQT's obligation to relocate the pipeline or purchase Big Sandy's mineral interest in the event Big Sandy desires to commence mining in the vicinity of the pipeline. Additionally, Paragraph 9 states:

> Except as otherwise provided herein, in no case shall Big Sandy continue its operations in such a way as to cause the additional loss of lateral or subjacent support with respect to, or to further endanger the safety of persons or the Pipeline or interfere with the construction, operation or maintenance of the Pipeline, unless KWVA has specifically released in writing Big Sandy's obligation to conduct its operations in such a manner, or KWVA has failed to

7

respond to a Notice within the applicable time period set forth below.

Big Sandy has the right to mine one hundred percent of the coal as long as it provides notice to EQT (Paragraph 7) and conducts its operations in a reasonable manner so as not to cause any additional harm to the pipeline (Paragraph 9). The Pike Circuit Court noted that had the parties intended the Agreement to apply to some tracts and not others, the parties could have drafted the Agreement to include such language. We agree. The Agreement clearly and unambiguously applies to the subject tracts.

## B. The Court of Appeals' analysis fails as a matter of law.

The Court of Appeals focused on Paragraphs 7, 10, and 14 in addition to Paragraph 5, discussed above. Paragraph 7 addresses Big Sandy's duty to notify EQT if it plans to mine in the vicinity of the pipeline and EQT's duty to relocate the pipeline or purchase the minerals. The Court of Appeals focused on one phrase, that EQT could relocate the pipeline *"elsewhere on Big Sandy's Surface Tracts."* Because any relocation of pipe would be on Big Sandy's surface tracts, the Court of Appeals concluded that the entire Agreement only applies to pipeline located on Big Sandy's surface tracts.

This interpretation must fail. The Court of Appeals is correct when it cited that the owner of a mineral estate has a limited right to access the surface. *See General Refractories Co. v. Swetman*, 197 S.W.2d 908, 910 (Ky. 1946). However, this does not equate, as the Court of Appeals

8

found, to the Agreement only applying to Big Sandy's surface tracts. It plainly means that if the pipeline has to be relocated, it will be relocated on Big Sandy's surface tracts. This is logical based on *Swetman* because Big Sandy would have no authority to order the pipeline to be placed on land in which it did not have an interest.

"There is no better established rule of law in this state than that a court cannot make a contract for the parties, but can only construe the contract it finds they have entered into. Nor has the court the authority to read words into a contract." *Alexander v. Theatre Realty Corp.*, 70 S.W.2d 380, 387-88 (Ky. 1934) (internal citations omitted). We believe that the Court of Appeals' opinion effectively reads into the Agreement terms and conditions the parties never intended, limiting the scope of the Agreement as applied to the easement. As such, the Court of Appeals' opinion must be reversed.

Paragraph 10 provides that if EQT elects to relocate the pipeline, that portion of the easement "shall automatically and without cost revert to Big Sandy immediately upon completion of such removal." Paragraph 14 addresses what constitutes abandonment of the easement by EQT and provides that the abandoned portion shall "automatically and immediately revert to Big Sandy without execution of release." The Court of Appeals held that it was absurd to hold the Agreement applied to the subject tracts because Big Sandy could not have a reversionary interest in something it does not own (the surface).

9

As Judge Thompson noted in his dissent, "If Big Sandy does not own the surface estate in any portion of the easement, Big Sandy would obviously not have a reversionary ownership interest superior to the true owner." We agree. "It is a fundamental rule that the grantor can grant only his interest in the property." *Dukes v. Link*, 315 S.W.3d 712, 717 (Ky. App. 2010). Big Sandy had some form of interest in all 35 tracts of land, and it conveyed an easement to EQT. Paragraphs 10 and 14 refer to the interest in the easement reverting back to Big Sandy in the case of the pipeline being relocated or abandoned. This is the only logical explanation as Big Sandy and EQT are the only parties to the Agreement and are the only parties who can be bound by the Agreement.

Big Sandy additionally argues that the Court of Appeals' decision relied on new grounds for reversal that weren't raised or briefed by the parties. Because we agree with the trial court's interpretation of the Agreement, we need not address this issue. The Court of Appeals' interpretation fails as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, the Court of Appeals' opinion is reversed and the partial summary judgment entered by the Pike Circuit Court is reinstated.

Minton, C.J., Cunningham, Hughes, Keller, VanMeter and Venters, JJ., concur. Wright, J., not sitting.

10

COUNSEL FOR APPELLANT:

Grahmn New Morgan
Adrianne Strong
Dinsmore & Shohl LLP

David Baird
Baird & Baird, PSC

COUNSEL FOR APPELLEE:

John Kevin West
Candace Smith
Steptoe & Johnson PLLC