RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 22a0007p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

RYAN P. ESTES, D.M.D., M.S., P.S.C.,

*Plaintiff-Appellant*,

*v.*

CINCINNATI INSURANCE COMPANY,

*Defendant-Appellee*.

⎫
⎪
⎪
⎪
⎬  No. 21-5587
⎪
⎪
⎪
⎭

─────────────────

Appeal from the United States District Court for the Eastern District of Kentucky at Covington.
No. 2:20-cv-00138—William O. Bertelsman, District Judge.

Decided and Filed: January 12, 2022

Before: GIBBONS, READLER, and MURPHY, Circuit Judges.

─────────────────

## COUNSEL

**ON BRIEF:** Hans M. Pfaffenberger, MORGAN & MORGAN KENTUCKY, PLLC, Louisville, Kentucky, for Appellant. Matthew P. Cook, KERRICK BACHERT PSC, Bowling Green, Kentucky, G. David Rubin, LITCHFIELD CAVO LLP, Pasadena, California, Daniel G. Litchfield, Laurence J.W. Tooth, LITCHFIELD CAVO LLP, Chicago, Illinois, for Appellee. Laura A. Foggan, CROWELL & MORING LLP, Washington, D.C., for Amicus Curiae.

─────────────────

## OPINION

─────────────────

MURPHY, Circuit Judge. Ryan Estes, a dentist, conducts his dental practice through a professional services corporation named Ryan P. Estes, D.M.D., M.S., P.S.C. This corporation, which we will call "Estes," operates two dental offices in Kentucky. In response to the COVID-19 pandemic, Kentucky temporarily barred healthcare corporations like Estes from providing

nonemergency care. Estes lost substantial income as a result. The company sought to recover this money under a property insurance policy it had purchased from Cincinnati Insurance Company. The policy required Cincinnati Insurance to pay Estes for lost business income that results from a "direct" "physical loss" to its dental offices. Policy, R.23-4, PageID 763, 783. This appeal requires us to consider whether the COVID-19 pandemic or the Kentucky shutdown orders caused such a physical loss to Estes's offices so as to allow it to recover its lost income. We and other circuit courts have uniformly interpreted this "physical loss" language not to cover similar pandemic-related claims under the laws of many other states. Because we believe Kentucky's highest court would agree with these decisions, we affirm the dismissal of Estes's complaint.

I

Estes owns and operates two northern Kentucky dental offices, one in Florence and the other in Fort Thomas. Like many Kentucky businesses, Estes has unfortunately suffered significant business losses from the combined effects of the COVID-19 pandemic and follow-on government shutdown orders that restricted normal business activities. In mid-March 2020, Kentucky's state government prohibited healthcare professionals from performing nonemergency procedures. This order barred Estes from providing routine dental care for about six weeks until late April. Estes could, however, continue to provide emergency services during this time.

Before the pandemic, Estes purchased a policy from Cincinnati Insurance to insure its business property. This policy indicates that Cincinnati Insurance "will pay for direct 'loss'" to Estes's "Covered Property" (including its dental offices and the property within the offices) if that loss results from a "Covered Cause of Loss." Policy, R.23-4, PageID 748. The policy defines "Covered Causes of Loss" to mean any "direct 'loss'" except losses originating from expressly excluded sources, such as earthquakes or government seizures. *Id.*, PageID 750–58. Critically, moreover, the policy defines the ubiquitous word "loss" to mean "accidental physical loss or accidental physical damage." *Id.*, PageID 783.

The policy also covers certain economic losses that accompany the direct physical loss or damage to Estes's property.  The policy's "Business Income" provision allows Estes to recover lost income that results from a "suspension" of its operations if this suspension is "caused by direct 'loss'" to Estes's property.  *Id.*, PageID 763, 830.  The policy's "Extra Expense" provision likewise permits Estes to recover expenses that Estes "would not have sustained if there had been no direct 'loss' to" its property.  *Id.*, PageID 764, 830.

Three other policy provisions allow Estes to seek funds because of a loss at *other* properties.  The "Civil Authority" provision allows Estes to recover lost income and extra expenses if an "action of civil authority" bars access to its dental offices because of "damage to" nearby properties caused by a "Covered Cause of Loss" (which, again, requires a "direct 'loss'").  *Id.*, PageID 750, 764, 831.  The "Ingress and Egress" provision allows Estes to seek lost income and extra expenses if a "direct 'loss'" to "contiguous" property bars "ingress and egress" to its dental offices.  *Id.*, PageID 833.  Lastly, the "Dependent Properties" provision permits Estes to seek lost income if it has to suspend its dental operations because of a "direct 'loss'" to a "dependent property."  *Id.*, PageID 801–02.  The policy defines "dependent property" as "property operated by others" who deliver materials or services to Estes, accept Estes's goods or services, make goods for delivery to Estes's customers, or attract customers to Estes's business.  *Id.*, PageID 802.

In the event of a covered "loss," the policy requires Estes to "[t]ake all reasonable steps to protect" its property "from further damage" and to keep records of these expenses.  *Id.*, PageID 775–76.  Estes alleges that this provision provides what it calls "sue and labor coverage" that allows it to recover the expenses it incurs to protect its property.  Compl., R.9, PageID 35.

Once the pandemic hit, Estes relied on all of these provisions to claim payment for its lost income and extra expenses generated by the COVID-19 pandemic and the government shutdown orders.  Cincinnati Insurance denied its claim.  Estes sued, asserting claims for, among other things, breach of contract and bad-faith denial of coverage.

Cincinnati Insurance moved to dismiss Estes's complaint.  The district court granted its motion, holding that the policy did not cover Estes's claims.  *Ryan P. Estes, D.M.D., P.S., P.S.C.*

*v. Cincinnati Ins. Co.*, __ F. Supp. 3d. __, 2021 WL 2292473, at \*6–8 (E.D. Ky. June 4, 2021). Estes now appeals the district court's interpretation of the policy. We review the court's dismissal of its complaint de novo. *See Wilkerson v. Am. Fam. Ins. Co.*, 997 F.3d 666, 668 (6th Cir. 2021).

II

The parties agree on two issues important to this appeal—one about the relevant law, the other about the relevant policy language. As for the relevant law, they agree that we must apply Kentucky contract law. In Kentucky, the proper meaning of a disputed contract term presents a legal question for the court. *See Foreman v. Auto Club Prop.-Cas. Ins. Co.*, 617 S.W.3d 345, 349 (Ky. 2021). Kentucky courts interpret unambiguous terms to bear their unambiguous meanings, but they interpret ambiguous terms strictly against the insurer. *See id.* at 349–50. When deciding whether coverage language falls on the unambiguous or ambiguous side of this line, courts ask whether the insured could have "reasonably expected" the language to cover a given claim. *Id.* at 350. And they presume that the language takes the ordinary meaning that the "average person" would give it. *Id.* at 349 (citation omitted); *see Thiele v. Ky. Growers Ins. Co.*, 522 S.W.3d 198, 200 (Ky. 2017). So, for example, an average person would not reasonably view a homebuilder's faulty craftsmanship as an "accident" covered by a liability insurance policy. *See Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.*, 306 S.W.3d 69, 72–76 (Ky. 2010). But the average person would reasonably view a motorcyclist's death from a crash as an "accidental" death covered by a life insurance policy, even if the motorcyclist was recklessly driving drunk when he crashed. *See Fryman ex rel. Fryman v. Pilot Life Ins. Co.*, 704 S.W.2d 205, 205–06 (Ky. 1986).

As for the relevant policy language, the parties agree that their dispute turns on the meaning of the phrase "direct" "physical loss." All of Estes's cited policy provisions require property (whether Estes's offices or nearby or dependent properties) to suffer a "direct 'loss.'" Policy, R.23-4, PageID 748, 750, 763–64, 775–76, 801–02, 830–31, 833. The policy defines the word "loss" in these provisions to mean "accidental physical loss or accidental physical damage." *Id.*, PageID 783. And Estes does not argue that any of its property has suffered "physical damage." We thus must ask: Did the COVID-19 pandemic or the ensuing government

shutdown orders cause a "direct" "physical loss" to Estes's dental offices (or nearby or dependent properties)?

The parties disagree only in their application of Kentucky's contract-law principles to this specific question. Estes argues that the average person might believe that the COVID-19 pandemic or government shutdown orders caused a "direct" "physical loss" to its dental offices because Estes could not use the offices for nonemergency dental care. Cincinnati Insurance responds that the phrase "direct" "physical loss" unambiguously requires a physical alteration or deprivation of the property. The Kentucky Supreme Court has yet to consider how this common insurance language applies in this COVID-19 context, so we must do our best to predict which side of this linguistic debate that court would take. *See United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 402 (6th Cir. 2019).

We are convinced that the Kentucky Supreme Court would agree with Cincinnati Insurance. The phrase "physical loss" would convey to the "average person" that a property owner has been tangibly deprived of the property or that the property has been tangibly destroyed. *Foreman*, 617 S.W.3d at 349 (citation omitted). If, for example, a thief stole the "[f]urniture" from Estes's dental offices, a person might say that Estes suffered a "physical loss" of the furniture. Policy, R.23-4, PageID 748. Or if a fire completely destroyed one of Estes's dental offices, a person might say that Estes suffered a "physical loss" of the building and its contents.

But the average person would not say that Estes suffered a "physical loss" of its dental offices when describing the harms that befell it in this case. COVID-19 did not destroy its dental offices, and the government shutdown orders did not dispossess it of them for a single day. *See Santo's Italian Café LLC v. Acuity Ins. Co.*, 15 F.4th 398, 401 (6th Cir. 2021). In fact, Estes could uninterruptedly use its offices for emergency care. A person would instead say that COVID-19 and the government shutdown orders caused "economic" or "business" losses. The amounts that Estes seeks in this suit confirm the point. Estes does not request a dime of payment for property losses (whether to its office buildings or the items within those buildings). Rather, Estes seeks only the income it lost and the expenses it incurred as a result of COVID-19 and

government restrictions.  But Estes bought a *property* insurance policy, not a *profit* insurance policy.

Dictionaries confirm that the "average person" would interpret the phrase "direct physical loss" in this fashion.  *See Aetna Cas. & Sur. Co. v. Commonwealth*, 179 S.W.3d 830, 838–39 (Ky. 2005); *Thiele*, 522 S.W.3d at 199–200.  The word "direct" means "stemming immediately from a source."  *Merriam-Webster's Collegiate Dictionary* 353 (11th ed. 2014).  The word "physical" means "of or relating to material things."  *Id.* at 935.  And the word "loss" means "destruction" or "deprivation" (that is, "the act of losing possession").  *Id.* at 736; *see also, e.g.*, *The American Heritage Dictionary of the English Language* 511, 1037, 1331 (5th ed. 2018).  Putting these definitions together, a covered source itself must destroy covered property or deprive the property's owner of possession.  *See Santo's*, 15 F.4th at 401.  If, by contrast, a source causes an owner to suffer only a "detrimental economic impact" without a tangible destruction or deprivation of property, that intangible or economic harm does not suffice.  10A Steven Plitt et al., *Couch on Insurance* § 148:46 (3d ed.), Westlaw (updated Dec. 2021); *see also* 5 John Garaffa et al., *New Appleman on Insurance Law Library Edition* § 42.02[3], Lexis (database updated 2022).  Yet COVID-19 and the government shutdown orders caused only these intangible or economic harms.

When the policy is read "as a whole," its other provisions likewise show that a direct physical loss requires the tangible destruction or deprivation of property.  *Big Sandy Co., L.P. v. EQT Gathering, LLC*, 545 S.W.3d 842, 845 (Ky. 2018) (citation omitted).  The Business Income and Extra Expense provisions, for example, permit Estes to recover lost income and extra expenses for a suspension of its dental operations only during the "period of restoration"—a defined period that ends on the earlier of when the property should have been "repaired, rebuilt, or replaced with reasonable speed and similar quality" or "when business is resumed at a new permanent location."  Policy, R.23-4, PageID 763–64, 783–84, 830, 838.  This definition makes no sense under Estes's view that the required "loss" need not be a tangible destruction or deprivation of property.  Under Estes's view, there is no property to rebuild or replace.  So how should courts determine the "period of restoration"?  *See Santo's*, 15 F.4th at 402–03.  Likewise, the Ingress and Egress provision allows Estes to seek lost income and extra expenses when Estes

cannot gain "ingress or egress" to one of its dental offices, but only if its inability to access the office arises from a "direct 'loss'" at a nearby property. Policy, R.23-4, PageID 833. If, however, the inability to use its office *itself* qualifies as a "physical loss" (as Estes claims), the separate requirement that a direct loss occur at a nearby property serves no purpose. Estes could simply seek lost income for its own "direct physical loss" (the loss of use of its property). In short, our reading of "direct" "physical loss" better fits the policy as a whole.

Estes claims the contrary by citing a different policy provision. It points out that the "loss" definition covers both physical loss "or" physical damage—in the disjunctive. *Id.*, PageID 783. And it claims that our narrower view of "physical loss" would render that phrase superfluous by making it completely overlap with its neighbor—"physical damage." *Id.* Estes is mistaken. Even under a narrower reading, the phrase "physical loss" still would cover a physical deprivation of property (such as a theft of furniture) that did not damage the property in the slightest. *See Santo's*, 15 F.4th at 404. Estes's reading, moreover, has a superfluity problem of its own: It fails to explain how its reading gives any effect to the word "physical" in the phrase "physical loss."

A broad circuit consensus also supports our interpretation. In *Santo's*, we rejected a similar insurance claim under Ohio law. *See* 15 F.4th at 400–02. When doing so, we interpreted the phrase "direct physical loss" to require what businesses in this COVID-19 context cannot show: a tangible destruction or deprivation of property. *See id.* Every other circuit court to consider this question has read nearly identical language in the same way. These courts have rejected pandemic-related claims under the laws of many states. *See Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, __ F.4th __, 2022 WL 43170, at *3–5 (5th Cir. Jan. 5, 2022) (Texas); *10012 Holdings, Inc. v. Sentinel Ins. Co.*, __ F.4th __, 2021 WL 6109961, at *2–5 (2d Cir. Dec. 27, 2021) (New York); *Goodwill Indus. of Cent. Okla., Inc. v. Phila. Indem. Ins. Co.*, __ F.4th __, 2021 WL 6048858, at *2–5 (10th Cir. Dec. 21, 2021) (Oklahoma); *Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*, 20 F.4th 327, 331–34 (7th Cir. 2021) (Illinois); *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 890–93 (9th Cir. 2021) (California); *Gilreath Fam. & Cosm. Dentistry, Inc. v. Cincinnati Ins. Co.*, 2021 WL 3870697, at *2 (11th Cir. Aug.

31, 2021) (per curiam) (Georgia); *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141, 1143–45 (8th Cir. 2021) (Iowa).

Estes responds that Kentucky courts have the right to give the phrase "direct physical loss" an idiosyncratic interpretation as compared to the view of these other states. Estes is correct that this case turns on how the Kentucky Supreme Court would resolve this question, not on how these other states would. *See United Specialty*, 936 F.3d at 402. Still, the courts in these other states follow essentially the same rules for interpreting contracts as the Kentucky Supreme Court does: They give unambiguous words their ordinary meaning. *See, e.g.*, *Santo's*, 15 F.4th at 400, 405; *10012 Holdings*, 2021 WL 6109961, at *2; *Oral Surgeons*, 2 F.4th at 1143. And it is quite unlikely that the "average" Kentuckian would interpret the phrase "direct physical loss" in an insurance policy differently from, say, the average Ohioan, New Yorker, or Iowan.

Estes cites only one state decision that it suggests requires us to depart from this consensus in the caselaw. *See State Farm Fire & Cas. Ins. Co. v. Aulick*, 781 S.W.2d 531, 532–33 (Ky. Ct. App. 1989). Yet *Aulick* does not help Estes. In that case, heating oil leaked into a home's basement while an oil company's delivery truck pumped oil to the home's tank. *Id.* at 532. The leak produced an "offensive odor" that ruined some of the homeowners' personal property. *Id.* They sought payment for this lost property under an insurance policy that covered "direct physical loss to property" caused by "Vehicles." *Id.* The parties agreed that the destroyed property qualified as a physical loss. *Id.* They disputed only whether this loss resulted from a "vehicle." *Id.* The court ruled that it did because a truck had caused the leak. *Id.* at 533. Although *Aulick* did not discuss the meaning of the phrase "direct physical loss," its result supports our view. The homeowners suffered a "physical loss to property" because the odor had ruined personal property and thus deprived them of it. Here, by contrast, Estes identifies no property—not its offices nor items within the offices—that COVID-19 or the government shutdown orders destroyed. Estes also possessed its offices and personal property throughout the pandemic. It is telling that, while the *Aulick* homeowners sought payment for lost *property*, Estes seeks payment for lost *income*. Unlike the homeowners, however, it suffered no physical loss to property.

In sum, neither the pandemic nor the government shutdown orders caused a "direct" "physical loss" to Estes's "property," so Estes cannot recover under the policy provisions on which it relies.  The district court thus properly granted Cincinnati Insurance's motion to dismiss.

We affirm.