# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Sullivan Management, LLC, Plaintiff,

v.

Fireman's Fund Insurance Company, and Allianz GLOBAL Risks, US Insurance Company, Defendants.

Appellate Case No. 2021-001209

---

## CERTIFIED QUESTION

---

ON CERTIFICATION FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF SOUTH CAROLINA
Mary G. Lewis, United States District Judge

---

Opinion No. 28105
Heard June 8, 2022 – Filed August 10, 2022

---

## CERTIFIED QUESTION ANSWERED

---

Justin O'Toole Lucey, Anna McCann, Sohayla R. Townes and Amanda Nicole Funai, all of Justin O'Toole Lucey, P.A., of Mt. Pleasant, for Plaintiff.

D. Larry Kristinik, A. Mattison Bogan, and Blake Terence Williams, all of Nelson Mullins Riley & Scarborough, of Columbia; Brett Ingerman, of Baltimore, MD, and Brett

Solberg, of Houston, TX, both of DLA Piper LLP (US), all for Defendants.

Harmon L. Cooper, of Crowell & Moring LLP, of Washington, D.C., for Amicus Curiae American Property Casualty Insurance Association, National Association of Mutual Insurance Companies, and South Carolina Insurance Association.

G. Murrell Smith, Jr., Jonathan M. Robinson, and Shanon N. Peake, of Smith Robinson Holler Dubose & Morgan, LLC, of Columbia; Amy Mason Saharia and Kaitlin J. Beach, of Williams & Connolly, LLP, of Washington, D.C., all for Amicus Curiae Selective Insurance Company of America.

Mark Billion, of Billion Law, of Bluffton; Rhonda D. Orin, Marshall Gilinsky, and Jason E. Kosek, of Anderson Kill P.C., of New York, NY, all for Amicus Curiae United Policyholders.

————————

**JUSTICE HEARN:**  Sullivan Management, LLC operates restaurants in South Carolina and filed suit to recover for business interruption losses during COVID-19 under a commercial property insurance policy issued by Fireman's Fund and Allianz Global Risks US Insurance Company (Fireman's). This Court accepted five questions from the federal district court stemming from the litigation but we elect to answer only the following question:

> Does the presence of COVID-19 in or near Sullivan's properties, and/or related governmental orders, which allegedly hinder or destroy the fitness, habitability or functionality of property, constitute "direct physical loss or damage" or does "direct physical loss or damage" require some permanent dispossession of the property or physical alteration to the property?

The answer to this question is no because the presence of COVID-19 and corresponding government orders prohibiting indoor dining do not fall within the policy's trigger language of "direct physical loss or damage."

## FACTS/PROCEDURAL BACKGROUND

On March 17, 2020, Governor Henry McMaster issued an executive order prohibiting on-site consumption of food and beverages at restaurants. This order followed the governor's declaration of a public health emergency and coincided with the issuance of "stay-at-home" orders by many localities across the state. Sullivan, which operates several Carolina Ale House establishments in South Carolina, sought coverage from its property insurance carrier for the loss of income as a result of both the presence of the coronavirus in its restaurants and the government-ordered prohibition of indoor dining. Fireman's denied the claim for failure to trigger coverage, and Sullivan filed suit in state court. Fireman's subsequently removed the case to federal court and then filed a motion to dismiss. After the parties submitted briefs on the motion to dismiss, the court certified five questions, which this Court accepted.

## STANDARD OF REVIEW

Our standard of review when answering a certified question depends on the context of the case. Typically, when a novel issue of law is raised, we are "free to decide the question based on [our] assessment of which answer and reasoning would best comport with the law and public policies of the state as well as the Court's sense of law, justice, and right." *Thomerson v. DeVito*, 430 S.C. 246, 249, 844 S.E.2d 378, 380 (2020). However, this question derives from contract interpretation, limiting our review to ascertaining the intent of the parties based on the language used in the policy.

## DISCUSSION

Sullivan contends the presence of COVID-19 and associated government orders prohibiting indoor dining constitute "direct physical loss or damage." It asserts the definitions of "physical", "loss", and "damage" warrant coverage here, either by the plain language of those terms or alternatively, because the terms are ambiguous and the Court must construe them in favor of the insured. Additionally, Sullivan argues other provisions in the policy, including the communicable disease coverage extension, demonstrate the phrase has a broad interpretation and is not

limited to situations involving permanent dispossession of property. Further, Sullivan contends pre-COVID-19 jurisprudence supports its interpretation of the phrase as well as several decisions from other jurisdictions.

Conversely, Fireman's asserts neither the presence of the coronavirus nor the government shut-down orders constitute "direct physical loss or damage" because that phrase requires "actual" or "discernable" physical damage. In other words, in order to trigger coverage, the loss or damage must be more than mere loss of use or economic loss; instead there must be a "physical alteration, destruction, or permanent dispossession of property." Fireman's supports its interpretation by highlighting the policy provision affording coverage during the "period of restoration", which is the time it takes to repair, replace, or rebuild the property. Fireman's, noting the significant majority of decisions from state and federal courts in its favor, contends the restoration provision would be mere surplusage if the phrase in question were construed as broadly as Sullivan requests. We agree with Fireman's.

The policy does not expressly define "direct physical loss or damage"; therefore, those terms must be interpreted under their common meaning. *See Fritz-Pontiac-Cadillac-Buick v. Goforth*, 312 S.C. 315, 318, 440 S.E.2d 367, 369 (1994) ("We must enforce, not write, contracts of insurance and we must give policy language its plain, ordinary, and popular meaning. We should not torture the meaning of policy language to extend or defeat coverage that was never intended by the parties."). Physical is defined as "(a) having material existence: perceptible especially through the senses and subject to the laws of nature; (b) of or relating to material things." *See Physical*, Merriam-Webster, https://www.merriam-webster.com/dictionary/physical (last visited Jul. 13, 2022). Loss means "destruction; ruin" and can also be "the disappearance or diminution of value, usually in an unexpected or relatively unpredictable way." *Loss*, Black's Law Dictionary (8th ed. 2004). Another definition for loss is "deprivation, the failure to keep possession, and a "decrease in amount, magnitude, value, or degree." *Loss*, Merriam-Webster, https://www.merriam-webster.com/dictionary/loss (last visited Jul. 13, 2022). Finally, damage means "loss or harm resulting from injury to person, property, or reputation." *Damage*, Merriam-Webster, https://www.merriam-webster.com/dictionary/damage (last visited Aug. 9, 2022).

Unsurprisingly, many courts across the country have been asked to answer similar questions concerning whether losses due to the presence of the coronavirus and/or resulting government closure orders are covered under commercial property

insurance policies. While it is helpful for the Court to be aware of the tidal wave of litigation, we rely on South Carolina law to answer this question. In other words, the vast amount of persuasive authority is just that, merely persuasive. Nevertheless, we agree that the alleged losses here do not constitute "direct physical loss or damage."

The triggering language for coverage under an all-risks policy—direct physical loss or damage—is the "North Star" of a property insurance policy. *Santo's Italian Cafe LLC v. Acuity Ins. Co.*, 15 F.4th 398, 402 (6th Cir. 2021) (noting the triggering language is the "North Star" of the policy in ascertaining what is covered and concluding "[i]t pays little heed to these omnipresent words in the policy, if not erases them, to construe them to cover business losses generated by a statewide shut-down order. All in all, the cause of the suspension of operations—the prohibition on in-person dining—did not arise from a physical loss of property or physical damage to it.").[1] The contention that a government shut-down order caused direct physical loss or damage is meritless. While the order prohibiting indoor dining certainly affected Sullivan's financial well-being, the order itself was not directly physical. *See, e.g.*, *Estes v. Cincinnati Ins. Co.*, 23 F.4th 695, 700 (6th Cir. 2022) (concluding that "COVID-19 and the government shutdown orders caused only . . . intangible or economic harms"); *Colectivo Coffee Roasters, Inc. v. Soc'y Ins.*, 974 N.W.2d 442, 448 (Wis. 2022) (noting that although the governor's order closing indoor dining restricted the use of the property, "loss of use is distinct from physical loss of or damage to property"); *Visconti Bus Serv., LLC v. Utica Nat'l Ins. Grp.*, 142 N.Y.S.3d 903, 915 (N.Y. Sup. Ct. 2021) ("The words 'direct' and 'physical,' which modify the phrase 'loss or damage,' require a showing of actual, demonstrable physical harm of some form to the insured premises — the forced closure of the premises for reasons exogenous to the premises themselves is insufficient to trigger coverage."). It is clear that mere loss of access to a business is not the same as direct physical loss or damage. Although the government orders affected business operations, these restrictions did not cause any direct physical loss or damage.

Sullivan contends it asserted more by also pleading that the presence of virus particles in its facilities constituted physical loss or damage. In doing so, it contends

---

[1] *Santo's Italian Café* concerned only the issue that a government's shut-down order may trigger coverage because the restaurant did not plead that the presence of COVID-19 also constituted direct physical loss or damage. Nevertheless, we find the Sixth Circuit's analysis helpful in this case.

loss and damage cannot mean the same thing, as the policy would be redundant if it did. While Sullivan is correct to note that the terms should not be read as synonymous, we fail to see how that is the case here. Loss connotes destruction, meaning it is broader than the term damage. Stated differently, a property that has suffered physical loss has been damaged, but the converse is not necessarily true because a property can suffer damage without enduring destruction or loss. Overall, while we acknowledge a small number of federal district courts have denied an insurance company's motion to dismiss,[2] the "overwhelming majority of the other courts that have addressed the same issue have concluded[] the presence of COVID-19 does not constitute a physical loss of or damage to property because it does not 'alter the appearance, shape, color, structure, or other material dimension of the property.'" *Colectivo Coffee Roasters*, 974 N.W.2d at 447; *see also Kim-Chee LLC v. Philadelphia Indem. Ins. Co.*, 535 F. Supp. 3d 152, 159 (W.D.N.Y. 2021) ("Courts commonly require proof of a change or alteration of the insured structure or property to establish that it suffered damage or loss.").[3] Indeed, as one court has noted, "the

---

[2] A slim minority of courts has construed "physical loss or damage" as ambiguous when the policy does not specifically exclude loss of use and denied a motion to dismiss noting that the arguments were better reserved in a motion for summary judgment. *See, e.g.*, *Salon XL Color & Design Grp., LLC v. W. Bend Mut. Ins. Co.*, 517 F. Supp. 3d 725, 729-30 (E.D. Mich. 2021). Sullivan relies on *Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co.*, 506 F. Supp. 3d 360, 373 (E.D. Va. 2020), but we do not find that case persuasive, as its reasoning has been rejected by many courts. *See Hamilton Jewelry, LLC v. Twin City Fire Ins. Co., Inc.*, 560 F. Supp. 3d 956, 968 (D. Md. 2021) (noting that *Elegant Massage* and a similar federal district court case from North Carolina represent "clear outliers that do not meaningfully weigh against the overwhelming authority that supports the conclusion that 'direct physical loss or direct physical damage' requires a showing of 'actual or tangible harm to or intrusion on the property itself'") (internal citation omitted).

[3] We refer the reader to the federal district court's decision for a survey of cases across the country concerning contamination caused by substances such as gasoline particles, toxic torts, odors, smoke, and other similar substances versus exposure from the coronavirus. *Kim-Chee LLC*, 535 F. Supp. 3d at 159 ("Because the presence of the virus does not alter the covered property, it is different from radiation, chemical dust and gas, asbestos and other contaminants which may persist and damage the covered property."). We agree that the presence of the coronavirus is different than traditional contamination cases where coverage may exist.

pandemic impacts human health and human behavior, not physical structures." *Uncork & Create LLC v. Cincinnati Ins. Co.*, 498 F. Supp. 3d 878, 884 (S.D. W. Va. 2020).

Moreover, other policy provisions bolster our contention that "direct physical loss or damage" contemplates a tangible or material component to loss or damage. The policy's restoration period provision limits business interruption coverage *during the period of restoration*, or put differently, the time for the physical loss or damage to be "repaired, rebuilt, or replaced with reasonable speed and like kind and quality." *See, e.g.*, *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 892 (9th Cir. 2021) ("That this coverage extends only until covered property is repaired, rebuilt, or replaced, or the business moves to a new permanent location suggests the Policy contemplates providing coverage only if there are physical alterations to the property. To interpret the Policy to provide coverage absent physical damage would render the 'period of restoration' clause superfluous."); *Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*, 20 F.4th 327, 333 (7th Cir. 2021) ("[T]he Policy provides coverage for losses sustained during a 'period of restoration,' which is defined by reference to '[t]he date [by which] the property ... should be *repaired, rebuilt, or replaced*.' (Emphasis added.) Without a physical alteration to property, there would be nothing to repair, rebuild, or replace."). While Sullivan took steps to mitigate the spread, such as increasing cleaning or installing plexiglass, these acts are different than restoring damaged or lost property. In other words, Sullivan had nothing to "repair, replace, or rebuild[,]" thus further demonstrating that direct physical loss or damage requires something material and tangible.

## CONCLUSION

Because neither the presence of the coronavirus nor the government order prohibiting indoor dining constitutes "direct physical loss or damage," the policy's triggering language is not met. Regarding the remaining questions,[4] we respectfully

---

[4] We decline to answer the following questions, most of which turn on whether the insured has suffered a direct physical loss or damage: do the Policy's Business Access and/or Civil Authority coverage require a complete prohibition of all access to Sullivan's properties; has there been a "communicable disease event" as that term is used in the Communicable Disease Coverage Extension; does Sullivan's alleged expenditures to mitigate COVID-19 qualify for Loss Avoidance or Mitigation Coverage; does the Mortality and Disease Exclusion bar all coverage or is it

decline to answer them as they present an issue of contract interpretation that is best reserved for the federal district court.

**BEATTY, C.J., KITTREDGE, FEW, JJ., and Acting Justice Blake A. Hewitt, concur.**

---

ambiguous and/or is it in conflict with the Communicable Disease Coverage Extension?