NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0531n.06

No. 21-3222

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Dec 21, 2022
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| BRUNSWICK PANINI'S, LLC; KENT ENTERTAINMENT GROUP, LLC, | ) ) ) | |
| Plaintiffs-Appellants, | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| v. | ) ) ) | |
| ZURICH AMERICAN INSURANCE COMPANY, | ) ) | |
| Defendant-Appellee. | ) ) | OPINION |

Before: MOORE, GRIFFIN, and MURPHY, Circuit Judges.

MURPHY, Circuit Judge. Brunswick Panini's, LLC, and Kent Entertainment Group, LLC, operate restaurants in northeast Ohio. Like many restaurant owners, they lost substantial business due to the COVID-19 pandemic and the ensuing government orders that restricted in-person dining. Brunswick and Kent sought to recover this lost income under a commercial insurance policy that they purchased from Zurich American Insurance Company. The policy obligates Zurich to pay for some amounts of lost income when this economic loss grows out of a "direct physical loss of or damage to" the companies' property. Policy, R.14-2, PageID 591. The district court granted Zurich's motion to dismiss because neither the pandemic nor the government shutdown caused a "direct physical loss of or damage to" Brunswick's or Kent's restaurants. In the meantime, another district court asked the Ohio Supreme Court to consider a similar insurance-policy question. *See Neuro-Commc'n Servs., Inc. v. Cincinnati Ins. Co.*, __ N.E.3d __, 2022 WL

17573883, at *3 (Ohio Dec. 12, 2022). We held this case for the Ohio Supreme Court's answer. That court has now interpreted similar policy language to bar coverage in these circumstances—consistent with our own prior answer to this question. *See id.* at *4 (quoting *Santo's Italian Café LLC v. Acuity Ins. Co.*, 15 F.4th 398, 402 (6th Cir. 2021)). Bound by *Neuro-Communication*, we affirm.

I

Brunswick and Kent operate restaurants in Ohio. Like many Ohio restaurant owners, they have unfortunately suffered significant losses from the combined effects of the COVID-19 pandemic and the follow-on government orders that prohibited in-person dining.

Before the pandemic, Brunswick and Kent had purchased an "all-risk" commercial insurance policy from Zurich. This policy indicates generally that Zurich will cover "direct physical loss of or damage to" Brunswick's and Kent's property. Policy, R.14-2, PageID 539. Two other types of coverage are relevant. The policy's "Business Income Provision" allows Brunswick or Kent to seek certain lost income or extra expenses from Zurich. Specifically, this provision permits the companies to recover for the "actual loss of 'business income'" resulting from a "suspension" of their restaurant operations if the suspension is "caused by direct physical loss of or damage to" Brunswick's or Kent's property. *Id.*, PageID 591. It also permits Brunswick or Kent to recover other "necessary 'extra expense'" that the companies "incur due to direct physical loss of or damage to property[.]" *Id.*, PageID 599.

The policy's "Civil Authority Provision" next allows Brunswick and Kent to seek lost income and extra expenses incurred as a result of governmental responses to damage to *neighboring* property. The policy provides that the companies may sometimes seek their income and expenses when an "order of civil authority" (that is, a government order) prohibits them from

accessing their restaurants. *Id.*, PageID 591. To trigger this coverage, though, the "order must result from" the government's "response to direct physical loss of or damage to" nearby properties that was caused by a "'covered cause of loss.'" *Id.*, PageID 591–92, 599.

The policy also contains many exclusions that prohibit coverage even if it would otherwise insure certain losses. Among other exclusions, the policy notes that Zurich will not pay for losses caused by "microorganisms." *Id.*, PageID 542. It defines "microorganism" to include viruses. *Id.*, PageID 527.

Once the pandemic hit, Brunswick and Kent sought to recover their lost income under the Business Income Provision and the Civil Authority Provision. Before Zurich could resolve this request, they sued it in state court. Brunswick and Kent sought a declaratory judgment that they were entitled to coverage and alleged that Zurich's denial of coverage would breach both the policy and the covenant of good faith and fair dealing. The companies also sought to certify a class action made up of several classes of businesses. Zurich removed the case to federal court on the basis of the Class Action Fairness Act.

Zurich then moved to dismiss the complaint for failure to state a claim. The district court granted this motion. *Brunswick Panini's, LLC v. Zurich Am. Ins. Co.*, 520 F. Supp. 3d 965, 968 (N.D. Ohio 2021). It reasoned that neither the pandemic nor the government shutdown orders qualified as a "direct physical loss of or damage to" Brunswick's or Kent's property that could trigger coverage for lost income under the Business Income Provision. *Id.* at 974–76. This reading, the court next noted, also disqualified Brunswick and Kent from coverage under the Civil Authority Provision. *Id.* at 976. That provision likewise applied only when the governmental order "results from a civil authority's response to direct physical loss of or damage to" nearby

property. *Id.* The court went on to hold, in the alternative, that Brunswick's and Kent's claims fell within the exclusion for losses caused by a microorganism. *Id.* at 977.

The companies appealed. We review the district court's dismissal of their complaint de novo. *See Wilkerson v. Am. Fam. Ins. Co.*, 997 F.3d 666, 668 (6th Cir. 2021).

II

We start by framing the narrow nature of the parties' debate. The parties agree that Ohio contract law governs. They also agree on the governing contract rules: Ohio courts interpret unambiguous contract terms as written and they construe ambiguous terms in favor of the insured. *See Neuro-Commc'n*, 2022 WL 17573883, at *3; *Dominish v. Nationwide Ins. Co.*, 953 N.E.2d 820, 822 (Ohio 2011); *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 652 N.E.2d 684, 686 (Ohio 1995). The parties likewise agree that their dispute under the Business Income Provision turns on whether Brunswick or Kent suffered a "direct physical loss of or damage to" their property. Policy, R.14-2, PageID 591. And they agree that the Civil Authority Provision requires the relevant governmental order to "result from" the government's response to "direct physical loss of or damage to" nearby property. *Id.* Given these points of agreement, this appeal turns on whether the spread of COVID-19 or the ensuing government shutdown orders could qualify as a "direct physical loss of or damage to" Brunswick's or Kent's restaurants (or nearby properties). Zurich says that this text is unambiguous and requires a tangible harm to property. Brunswick and Kent respond that the key phrase ("direct physical loss of or damage to") is ambiguous and could be read to cover limits on the use of property.

The Ohio Supreme Court decided to consider a similar question in *Neuro-Communication*. 2022 WL 17573883, at *3. In that case, the relevant insured business provided "hearing and balance services to its patients[.]" *Id.* at *2. The Ohio government's shutdown orders forced it to

4

close its operations for about six weeks, and it sought reimbursement for lost income under a similar insurance policy issued by Cincinnati Insurance Company. *Id.* The Ohio Supreme Court rejected the business's argument that the phrase "physical loss" could include a loss of use of its property to serve customers. *Id.* at \*4. It reasoned that a "physical loss" requires "loss or damage to Covered Property that is physical in nature" and thus does not cover simply "a loss of the ability to use Covered Property for business purposes." *Id.*

In the process, the Ohio Supreme Court agreed with our own prior decision in *Santo's*. *See* 2022 WL 17573883, at \*4. Like this case, *Santo's* concerned an Ohio restaurant owner seeking to recover business losses caused by the pandemic and the Ohio government's responses restricting in-person dining. *See* 15 F.4th at 400. And like Zurich's insurance policy, the policy in *Santo's* covered the loss of business income resulting from a suspension of operations "'caused by direct physical loss of or damage to property' at the restaurant." *Id.* (citation omitted). *Santo's* held that this phrase ("direct physical loss of or damage to" property) unambiguously excluded losses arising from COVID-19 or related government shutdown orders. *Id.* at 401–02. We interpreted this language as covering only "tangible" deprivations of or "tangible" harms to property, like those caused by a theft or fire. *See id.* at 403 (citing 10A Steven Plitt et al., *Couch on Insurance* § 148:3 (2021)). The Ohio Supreme Court's approval of *Santo's* confirms that we properly applied Ohio contract law. *See Neuro-Commc'n*, 2022 WL 17573883, at \*4.

This case raises the same question as *Neuro-Communication* (and *Santo's*), so we must reach the same answer. In cases governed by Ohio contract law, we "must follow the controlling decisions of the Ohio Supreme Court." *Henry v. Wausau Bus. Ins. Co.*, 351 F.3d 710, 713 (6th Cir. 2003). And we see no basis to distinguish the contract in this case from the one in *Neuro-Communication*. *Cf. SAS Int'l, Ltd. v. Gen. Star Indem. Co.*, 36 F.4th 23, 26–29 (1st Cir. 2022).

To be sure, a phrase in one contract does not necessarily take the same meaning as the same phrase in another contract if the context suggests that the parties intended a different meaning. *See Wilkerson*, 997 F.3d at 669–70. But the context suggests that the parties meant for the same meaning across these cases. To begin with, specialized trade usages can support an inference of consistent meaning. *Cf. Frigaliment Importing Co. v. B.N.S. Int'l Sales Corp.*, 190 F. Supp. 116, 119 (S.D.N.Y. 1960) (Friendly, J.). And, as *Santo's* recognized, the phrases at issue in these cases "are the general touchstones of coverage . . . for most commercial property insurance policies." 15 F.4th at 402 (citing 10A *Couch on Insurance* § 148:46). That is perhaps why—as the Ohio Supreme Court noted—the great weight of appellate authority to consider this question has interpreted similar insurance policies in the same way (under other states' laws). *See Neuro-Commc'n*, 2022 WL 17573883, at *7; *see, e.g.*, *Ryan P. Estes, D.M.D., M.S., P.S.C. v. Cincinnati Ins. Co.*, 23 F.4th 695, 699–702 (6th Cir. 2022) (Kentucky law); *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 890–91 (9th Cir. 2021) (California law); *SAS Int'l*, 36 F.4th at 26–29 (1st Cir. 2022) (Massachusetts law); *Q Clothier New Orleans, L.L.C. v. Twin City Fire Ins. Co.*, 29 F.4th 252, 258–60 (5th Cir. 2022) (Louisiana law); *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141, 1143–44 (8th Cir. 2021) (Iowa law); *see also Cherokee Nation v. Lexington Ins. Co.*, __ P.3d __, 2022 WL 4138429, *4 n.13 (Okla. Sept. 13, 2022) (citing cases).

In addition, other provisions in Zurich's policy confirm that the policy uses "direct physical loss" in the same way to require tangible harm. Like the policy in *Neuro-Communication*, the Business Income Provision permits an insured to recover income for business suspensions only during a "period of restoration." Policy, R.14-2, PageID 591. The policy defines the "period of restoration" to start when the "direct physical loss or damage" occurs and to end when the property "could have been physically capable of resuming" its prior level of operations after being "restored

6

to the physical" size and configuration necessary for the required permits. *Id.*, PageID 529–30. This provision would make no sense if "direct physical loss" need not be tangible. *See Neuro-Commc'n*, 2022 WL 17573883, at \*4; *see also Santo's*, 15 F.4th at 402–03.

In sum, we are bound by *Neuro-Communication*'s interpretation. Under its analysis, Brunswick and Kent have not adequately alleged the required "direct physical loss of or damage to" their restaurants or to nearby properties simply from their loss of use. *Neuro-Commc'n*, 2022 WL 17573883, at \*4. As we noted in *Santo's*, therefore, we need not consider any other interpretive question, such as whether the microorganism exclusion would otherwise have barred Brunswick's and Kent's claims. *See* 15 F.4th at 406–07.

We affirm.