# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-3211
_____

Oral Surgeons, P.C.

*Plaintiff - Appellant*

v.

The Cincinnati Insurance Company

*Defendant - Appellee*

------------------------------

The Restaurant Law Center

*Amicus on Behalf of Appellant(s)*

American Property Casualty Insurance Association; National Association of
Mutual Insurance Companies

*Amici on Behalf of Appellee(s)*
_____

Appeal from United States District Court
for the Southern District of Iowa - Central
_____

Submitted: April 14, 2021
Filed: July 2, 2021
_____

Before LOKEN, WOLLMAN, and STRAS, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

Oral Surgeons, P.C., offers oral and maxillofacial surgery services at its four offices in the Des Moines, Iowa, area. Oral Surgeons stopped performing non-emergency procedures in late March 2020, after the governor of Iowa declared a state of emergency and imposed restrictions on dental practices because of the COVID-19 pandemic. Oral Surgeons resumed procedures in May 2020 as the restrictions were lifted, adhering to guidance from the Iowa Dental Board.

Oral Surgeons submitted a claim to The Cincinnati Insurance Company (Cincinnati) for losses it suffered as a result of the suspension of non-emergency procedures. The policy insured Oral Surgeons against lost business income and certain extra expense sustained due to the suspension of operations "caused by direct 'loss' to property." The policy defines "loss" as "accidental physical loss or accidental physical damage." Cincinnati responded that the policy did not afford coverage because there was no direct physical loss or physical damage to Oral Surgeons's property. This lawsuit followed. The district court[1] granted Cincinnati's motion to dismiss, concluding that Oral Surgeons was not entitled to declaratory judgment and that it had failed to state claims for breach of contract and bad faith. Reviewing *de novo* and applying Iowa law in this diversity action, we affirm. See Sletten & Brettin Orthodontics, LLC v. Cont'l Cas. Co., 782 F.3d 931, 934 (8th Cir. 2015) (standard of review).

Oral Surgeons maintains that the COVID-19 pandemic and the related government-imposed restrictions on performing non-emergency dental procedures

---

[1]The Honorable Charles H. Wolle, United States District Judge for the Southern District of Iowa.

constituted a "direct 'loss' to property" because Oral Surgeons was unable to fully use its offices. Oral Surgeons argues that the policy's disjunctive definition of "loss" as "physical loss" or "physical damage" creates an ambiguity that must be construed against Cincinnati. To give the terms separate meanings, Oral Surgeons suggests defining physical loss to include "lost operations or inability to use the business" and defining physical damage as a physical alteration to property. Appellant's Br. 41. Amicus Restaurant Law Center contends that "physical loss" occurs whenever the insured is physically deprived of the insured property.

We must construe the policy to give effect to the intent of the parties. Boelman v. Grinnell Mut. Reinsurance Co., 826 N.W.2d 494, 501 (Iowa 2013). Intent is determined by the language of the policy itself, unless there is ambiguity. Id. Ambiguity exists "[o]nly when policy language is subject to two reasonable interpretations." T.H.E. Ins. Co. v. Est. of Booher, 944 N.W.2d 655, 662 (Iowa 2020); see Cairns v. Grinnell Mut. Reinsurance Co., 398 N.W.2d 821, 824 (Iowa 1987) ("Ambiguity exists if, after the application of pertinent rules of interpretation to the face of the instrument, a genuine uncertainty results as to which one of two or more meanings is the proper one." (cleaned up)). "Generally speaking, the plain meaning of the insurance contract prevails." Est. of Booher, 944 N.W.2d at 662.

The policy here clearly requires direct "physical loss" or "physical damage" to trigger business interruption and extra expense coverage. Accordingly, there must be some physicality to the loss or damage of property—*e.g.*, a physical alteration, physical contamination, or physical destruction. See Milligan v. Grinnell Mut. Reinsurance Co., No. 00-1452, 2001 WL 427642, at *2 (Iowa Ct. App. Apr. 27, 2001) (concluding that "direct physical loss or damage" "unambiguously referred to injury to or destruction of" insureds' property and finding support for the conclusion "in the fact that the loss or destruction must be physical in nature"); see also The Phx. Ins. Co. v. Infogroup, Inc., 147 F. Supp. 3d 815, 823 (S.D. Iowa 2015) ("The common usage of physical in the context of a loss therefore means the loss of something

material or perceptible on some level."); 10A Steven Plitt et al., Couch on Insurance § 148:46 (3d ed. 2021) ("The requirement that the loss be 'physical' . . . is widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property." (footnotes omitted)).  The policy cannot reasonably be interpreted to cover mere loss of use when the insured's property has suffered no physical loss or damage.  See Pentair, Inc. v. Am. Guar. & Liab. Ins. Co., 400 F.3d 613, 616 (8th Cir. 2005) ("Once physical loss or damage is established, loss of use or function is certainly relevant in determining the amount of loss, particularly a business interruption loss."); Infogroup, 147 F. Supp. 3d at 825 ("While a loss of use may, in some cases, entail a physical loss, the Court does not find 'loss of use' and 'physical loss or damage' synonymous.").

The unambiguous requirement that the loss or damage be physical in nature accords with the policy's coverage of lost business income and incurred extra expense during the "period of restoration."  The "period of restoration" begins at the time of "loss" and ends on the earlier of:

(1)  The date when the property at the "premises" should be repaired, rebuilt or replaced with reasonable speed and similar quality; or
(2)  The date when business is resumed at a new permanent location.

Property that has suffered physical loss or physical damage requires restoration.  That the policy provides coverage until property "should be repaired, rebuilt or replaced" or until business resumes elsewhere assumes physical alteration of the property, not mere loss of use.

Our precedent interpreting "direct physical loss" under Minnesota law is instructive here.  See Source Food Tech., Inc. v. U.S. Fid. & Guar. Co., 465 F.3d 834

(8th Cir. 2006); Pentair, 400 F.3d 613. The policy in Pentair covered "all risk of direct physical loss of or damage to property described herein." 400 F.3d at 614. Pentair filed an insurance claim after an earthquake caused a two-week loss of power to Taiwanese factories that supplied products to a Pentair subsidiary. Pentair shipped the delayed products via airfreight, at great expense. We upheld the district court's determination that the power outages merely shut down manufacturing operations, which did not cause direct physical loss of or damage to Pentair's supplier's property. Id. at 616. We rejected the argument that loss of use or function necessarily constitutes "direct physical loss or damage," explaining that such an interpretation would allow coverage to be "established *whenever* property cannot be used for its intended purpose." Id.

The policy in Source Food Technology similarly covered certain losses caused by "direct physical loss to Property." 465 F.3d at 835. Source Food filed an insurance claim after beef product manufactured in Canada could not be imported into the United States because of an embargo. Source Food was unable to fulfill orders, was forced to find a new supplier, and lost its best customer as a result of its inability to deliver beef product. The beef product was not "physically contaminated or damaged in any manner," however. Id. at 838. We rejected the argument that "impairment of function and value of a food product caused by government regulation is a direct physical loss to insured property," because to hold otherwise "would render the word 'physical' meaningless." Id. at 836, 838. Minnesota law is not materially distinguishable from Iowa law, and we conclude that the reasoning set forth in Pentair and Source Food Technology applies here.

Oral Surgeons did not allege any physical alteration of property. The complaint pleaded generally that Oral Surgeons suspended non-emergency procedures due to the COVID-19 pandemic and the related government-imposed restrictions. The complaint thus alleged no facts to show that it had suspended activities due to direct "accidental *physical* loss or accidental *physical* damage,"

-5-

regardless of the precise definitions of the terms "loss" or "damage." We reject Oral Surgeons's argument that the lost business income and the extra expense it sustained as a result of the suspension of non-emergency procedures were "caused by direct 'loss' to property."[2]

The policy clearly does not provide coverage for Oral Surgeons's partial loss of use of its offices, absent a showing of direct physical loss or physical damage.[3] "[W]here no ambiguity exists, we will not write a new policy to impose liability on the insurer." Nat'l Sur. Corp. v. Westlake Invs., LLC, 880 N.W.2d 724, 734 (Iowa 2016); see Boelman, 826 N.W.2d at 501 ("We will not strain the words or phrases of

_____

[2]This appeal presents only the question whether the COVID-19 pandemic and the related government-imposed restrictions constitute direct "accidental physical loss or accidental physical damage" under the policy.

[3]Iowa state and federal courts have uniformly determined that the COVID-19 pandemic and the related government-imposed restrictions do not constitute direct physical loss. Lisette Enters., Ltd. v. Regent Ins. Co., No. 4:20-cv-00299, 2021 WL 1804618, at *1–2 (S.D. Iowa May 6, 2021) (Iowa Court of Appeals's decision in Milligan "is consistent with the principle that coverage for 'loss' or 'damage' under Iowa law at least requires the presence of a physical condition on or affecting the property located at the insured premises."), *appeal docketed*, No. 21-2238 (8th Cir. June 4, 2021); Gerleman Mgmt., Inc. v. Atl. States Ins. Co., No. 4:20-cv-183, 2020 WL 8093577, at *5 (S.D. Iowa Dec. 11, 2020) ("It is a settled matter in Iowa law that direct physical loss or damage requires tangible alteration of property and that loss of use alone is insufficient."), *appeal docketed*, No. 21-1082 (8th Cir. Jan. 12, 2021); Palmer Holdings & Invs., Inc. v. Integrity Ins. Co., 505 F. Supp. 3d 842, 856 (S.D. Iowa 2020) (same), *appeal docketed*, No. 21-1040 (8th Cir. Jan. 7, 2021); Whiskey River on Vintage, Inc. v. Ill. Cas. Co., 503 F. Supp. 3d 884, 899 (S.D. Iowa 2020) (same), *appeal docketed*, No. 20-3707 (8th Cir. Dec. 29, 2020); Wakonda Club v. Selective Ins. Co. of Am., No. LACL148208, slip op. at 6 (Iowa Dist. Ct. Polk Cnty. March 3, 2021) ("Wakonda claims no injury to or destruction to realty or other loss physical in nature and therefore [its claim is] not covered under the policy."), *appeal docketed*, No. 21-0374 (Iowa Ct. App. Mar. 16, 2021).

the policy in order to find liability that the policy did not intend and the insured did not purchase.").

The judgment is affirmed.

_____