# IN THE SUPREME COURT OF IOWA

No. 21–0374

Submitted February 21, 2022—Filed April 22, 2022

**WAKONDA CLUB,**

 Appellant,

vs.

**SELECTIVE INSURANCE COMPANY OF AMERICA,**

 Appellee.

---

Appeal from the Iowa District Court for Polk County, Celene Gogerty, Judge.

A business that temporarily suspended its operations in accordance with a COVID-19 disaster proclamation in March 2020 and was denied coverage under its business interruption insurance policy appeals a district court order granting summary judgment for its insurer. **AFFIRMED.**

Oxley, J., delivered the opinion of the court, in which all justices joined.

James W. Carney (argued), Nicholas J. Mauro, and Jasper P. Verhofste of Carney & Appleby, P.L.C., Des Moines, for appellant.

Douglas A. Haag (argued) of Patterson Law Firm, L.L.P., Des Moines, for appellee.

**OXLEY, Justice.**

Wakonda Club operates a private golf and country club in Des Moines. After Governor Kim Reynolds issued a proclamation restricting in-person services at bars and restaurants in response to the COVID-19 pandemic in 2020, Wakonda Club made a claim under its all-risk commercial property insurance policy for income it lost during the time it temporarily closed its facilities in compliance with the Governor's proclamation. Wakonda Club denied having any coronavirus contamination on its property or among its employees or members, asserting that its lost profits were caused solely by the loss of its ability to fully use its premises. The claim was denied, Wakonda Club sued, and the district court granted summary judgment in favor of the insurer. Wakonda Club now appeals.

This case is one of hundreds around the country addressing business interruption insurance coverage for businesses impacted by similar government proclamations and orders stemming from the COVID-19 pandemic. This case presents our first opportunity to address whether the mere loss of use of business property constitutes "direct physical loss of or damage to property" to trigger coverage under the business interruption endorsement to an all-risk commercial property insurance policy like the one involved here. For the reasons provided below, we conclude the language "direct physical loss of" property requires a physical aspect to the loss of the property before coverage is triggered. We reject Wakonda Club's argument that loss of use, without something more,

is enough. We therefore affirm the district court's order granting summary judgment in favor of the insurer.

I.

On March 17, 2020, Governor Reynolds issued a proclamation closing all bars and restaurants from dine-in or in-person service in response to the COVID-19 pandemic. Section 3(A) of the proclamation provides:

> **Restaurants and Bars:** All Restaurants and Bars are hereby closed to the general public except that to the extent permitted by applicable law, and in accordance with any recommendations of the Iowa Department of Public Health, food and beverages may be sold if such food or beverages are promptly taken from the premises, such as on a carry-out or drive-through basis, or if the food or beverage is delivered to customers off the premises.

In compliance with the proclamation, Wakonda Club completely closed down its business from March 17 through March 28, when it re-opened enough to allow carryout food sales. It resumed some in-person operations on May 22, with restrictions for both its golf course and restaurant operations.

Wakonda Club submitted a claim to its insurer, Selective Insurance Company of America (Selective), for losses it suffered as a result of the Governor's proclamation. Selective provided Commercial Insurance Coverage to Wakonda Club, including Commercial Property Coverage. The Commercial Property Coverage Part was an all-risk policy, extending coverage to all losses other than those that were excluded. The Commercial Property Coverage Part included a Business Income (and Extra Expense) Coverage Form endorsement. As relevant here, the Business Income endorsement provides coverage as follows:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the

"period of restoration." The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

"Suspension" is specifically defined to mean "[t]he slowdown or cessation of your business activities." "Period of restoration" is also a defined term, meaning the period that:

**a.** Begins:

**(1)** 72 hours after the time of direct physical loss or damage for Business Income Coverage; or

**(2)** Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

caused by or resulting from any Covered Cause of Loss at the described premises; and

**b.** Ends on the earlier of:

**(1)** The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

**(2)** The date when business is resumed at a new permanent location.

"Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy." The parties agree that Wakonda Club's clubhouse and golf course are included in the premises described in the Declarations and include a Business Income Limit of Insurance.

The Business Income Coverage Form also provided coverage for "Extra Expenses." Extra Expense was defined in the policy to "mean[] necessary expenses you incur during the 'period of restoration' that you would not have

incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss." The policy specifies:

> We will pay Extra Expense . . . to:
>
> **(1)** Avoid or minimize the 'suspension' of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.
>
> **(2)** Minimize the 'suspension' of business if you cannot continue 'operations'.

The final provision of the Commercial Property Coverage Part relevant to this appeal is an endorsement titled "Exclusion of Loss Due to Virus or Bacteria," which provided: "We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."

Selective denied Wakonda Club's claim, responding that the policy did not afford coverage because there was no direct physical loss of or damage to Wakonda Club's property, and even if there was direct physical loss of or damage to Wakonda Club's property, the claim would be excluded under the virus exclusion.

Wakonda Club sued Selective, asserting claims for breach of contract and bad-faith denial of insurance coverage. Wakonda Club claimed that the policy provides coverage for income losses stemming from Governor Reynolds's proclamation. In its petition, Wakonda Club alleged that to its knowledge, no coronavirus was present on its premises or infected any of its employees or members at the club at any time prior or subsequent to the Governor's

proclamation. Selective moved for summary judgment on the basis that the terms of the policy did not provide coverage. The district court granted Selective's motion, holding the policy does not cover Wakonda Club's losses because Wakonda Club did not claim any "injury to or destruction to realty or other loss physical in nature" and the policy's virus exclusion—which excludes payment for "loss or damage caused by or resulting from any virus"—forecloses coverage. Wakonda Club appealed, and we retained the appeal.

II.

Wakonda Club raises three issues on appeal: (1) that the policy's "direct physical loss of or damage to property" language in the Business Income and Extra Expense provisions covers its economic losses, (2) the policy's virus exclusion does not apply to its claim because Wakonda Club's losses stemmed from Governor Reynolds's proclamation, not the COVID-19 virus, and (3) it reasonably expected its policy to provide coverage for its business interruption losses. We conclude Selective was entitled to summary judgment because there was no "direct physical loss of" Wakonda Club's property, so Wakonda Club's losses are not covered under the policy. Without coverage, there is no need for us to address whether the virus exclusion would have excluded coverage. Our holding is premised on our pre-COVID-19 insurance law and is consistent with the vast majority of other courts around the country construing similar policy language involving business interruption coverage during the COVID-19 pandemic.

A.

"We review a district court's summary judgment ruling that interprets an insurance policy for correction of errors at law." *Amish Connection, Inc. v. State Farm Fire & Cas. Co.*, 861 N.W.2d 230, 235 (Iowa 2015). Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3).

We follow well-established rules when determining the meaning of insurance policy provisions. *Greenfield v. Cincinnati Ins.*, 737 N.W.2d 112, 118–19 (Iowa 2007). We construe unambiguous insurance contracts as written. *Kimball Bros. v. Palatine Ins. Co., Ltd., of London, England,* 195 N.W. 987, 988 (Iowa 1923). If a policy does not define a term, we must give the words their ordinary meaning, *see Boelman v. Grinnell Mut. Reins.*, 826 N.W.2d 494, 501 (Iowa 2013), which is considered from the "viewpoint of an ordinary person, not a specialist or expert," *Grinnell Mut. Reins. v. Jungling*, 654 N.W.2d 530, 536 (Iowa 2002). We interpret ambiguous policy provisions in favor of the insured, so we first determine if the relevant policy provisions are ambiguous. *A.Y. McDonald Indus., Inc. v. Ins. Co. of N. Am.*, 475 N.W.2d 607, 618–19 (Iowa 1991) (en banc). Ambiguity exists only when the language of the insurance policy is capable of more than one reasonable interpretation. *Farm Bureau Life Ins. v. Holmes Murphy & Assoc., Inc.*, 831 N.W.2d 129, 134 (Iowa 2013). However, simple

disagreement about the meaning of terms does not establish an ambiguity. *Farm Bureau Life Ins.*, 831 N.W.2d at 134.

B.

Wakonda Club has the initial burden of showing its claim falls within the policy's coverage. *Am. Guar. & Liab. Ins. v. Chandler Mfg. Co.*, 467 N.W.2d 226, 228 (Iowa 1991). We begin our analysis by looking at the policy's Business Income and Extra Expense provisions. *See Greenfield*, 737 N.W.2d at 118. The fighting issue in this case is the requirement in the Business Income provision that a suspension of operations must be "caused by direct physical loss of or damage to property".[1] Wakonda Club does not dispute that its physical property was not damaged but argues "loss of" or "damage to" must be read to mean different things and that the loss of its ability to use its premises due to the shutdown order constitutes "direct physical loss of" its property.

It appears we have never addressed the meaning of the phrase "direct physical loss of or damage to property" in the context of a commercial property insurance policy. We agree with Wakonda Club's interpretation giving meaning to the disjunctive "loss of *or* damage to property" such that the policy provides business interruption coverage if Wakonda Club suffers either a "loss of" its property or "damage to" its property. *See Amish Connection, Inc.*, 861 N.W.2d at 240–41 (explaining that "[t]he 'or' in this [exclusion] provision is disjunctive," so that coverage was properly denied if either of the two triggering circumstances

---

[1]Relatedly, the Extra Expense provision limits coverage for necessary expenses that the insured party incurs during the "period of restoration" that it would not have incurred if there had been no "direct physical loss of or damage to property."

were found); *see also* Erik S. Knutsen & Jeffrey W. Stempel, *Infected Judgment: Problematic Rush to Conventional Wisdom and Insurance Coverage Denial in A Pandemic,* 27 Conn. Ins. L.J. 185, 247 (2020) ("Some courts have held that the disjunctive 'or' between 'physical loss of or damage to' property must mean that 'loss' must mean something different than 'damage' (typically it is held to mean an absence of property, as in theft)."). But that still leaves the requirement that the "loss of property" must be a "direct physical" loss of Wakonda Club's property. We turn then to the meaning of "direct physical" in the context of property insurance.

Given the dearth of Iowa caselaw, Selective relies heavily on *Milligan v. Grinnell Mutual Reinsurance* to support its position that the loss of use of an insured's property, without physical loss of or damage to the insured's covered property, does not satisfy the coverage provision. No. 00–1452, 2001 WL 427642, at *2 (Iowa Ct. Ap. April 27, 2001). In *Milligan,* the Iowa Court of Appeals dealt with a policy provision prohibiting a party from bringing a legal challenge to a coverage determination unless it was brought "within 2 years after the date on which the direct physical loss or damage occurred." *Id.* at *1. The insured, who brought a claim more than two years after its building was damaged by a fire, argued the phrase "direct physical loss or damage" triggering the two-year period was ambiguous and could mean "the date they received their repair estimates, the date the building was gutted[,] or the date the repairs commenced." *Id.* at *2. Our court of appeals agreed with the insurer, explaining:

> [T]he dictionary gives the word loss its commonly understood meaning of damage or destruction. Damage is in turn defined as injury to property. Given the foregoing, it appears that loss or damage as used in the suit-limitation provision unambiguously referred to injury to or destruction of the realty owned by the Insureds. This conclusion finds further support in the fact that the loss or destruction must be physical in nature . . . .

*Id.* (citations omitted). *Milligan* involved the very different context of determining when a contractual time limit was triggered, not whether the phrase provided coverage. *See id.* at *1. The court was not asked to consider whether the disjunctive use of "loss of or damage to" meant the terms necessarily had different meanings such that "loss of" property could include loss of use of the property. Finally, the case involved a building damaged by fire, such that "physical" was not critical to the court's determination, although it did play a part. *See id.* at *2. *Milligan* nonetheless does interpret the same policy language and recognizes that the policy language required the loss to be physical in nature.[2] *See id.*

Another Iowa court of appeals case sheds light on the meaning of the word "physical" as used in a liability policy defining "property damage" to include "[p]hysical injury to or destruction of tangible property." *Kartridg Pak Co. v. Travelers Indem. Co.*, 425 N.W.2d 687, 688 (Iowa Ct. App. 1988). Although the case involves a liability policy rather than an all-risk commercial property

---

[2]*See, e.g.*, *Lisette Enters., Ltd. v. Regent Ins.*, 537 F. Supp. 3d 1038, 1045 (S.D. Iowa 2021) (construing a similar policy under Iowa law seeking business interruption coverage related to Governor Reynolds's COVID-19 proclamation and similarly concluding *Milligan* is of limited value in construing the phrase "direct physical loss of or damage to property" given the significant differences between the uses of the provision and arguments made, but recognizing that *Milligan* was "consistent with the principle that coverage for 'loss' or 'damage' under Iowa law at least requires the presence of a physical condition on or affecting the property located at the insured premises").

business interruption policy, it explained that many insurers added the modifier "physical" to their Commercial General Liability policy language in 1973 to avoid coverage for intangible losses, such as diminution in value. *Id.* at 689. Kartridg Pak had sold a deboning machine to a customer who sued Kartridg Pak for the diminution in value of its pork products because the deboning machine left too much bone in the meat to meet FDA standards. *Id.* The court concluded that the customer had not suffered property damage to its meat where the customer claimed only diminution in the meat's value. *Id.* at 690. This explanation gives context to "physical" in the policy at issue to mean tangible as opposed to only economic. *See also Yegge v. Integrity Mut. Ins.*, 534 N.W.2d 100, 102 (Iowa 1995) (holding homeowners who received judgment against building contractor for costs to finish constructing house had no claim under contractor's liability insurance policy because the damages sought were intangible economic damages, not physical injury to property required to meet definition of "property damage," and citing *Kartridg Pak*).

Although no Iowa state court has construed the phrase "direct physical loss of or damage to property" in the context of this case, a federal district court applied Iowa law in construing a very similar provision in *The Phoenix Insurance Company v. Infogroup, Inc.*, 147 F. Supp. 3d 815 (S.D. Iowa 2015). Infogroup was a data provider located in Carter Lake that moved some of its business operations in response to a threat of flooding from the Missouri River. *Id.* at 820. It filed an insurance claim seeking coverage for its relocation expenses under an Extra Expense provision covering "reasonable and necessary expenses you incur . . .

that you would not have incurred if there had been no direct physical loss of or damage to property at the premises." *Id.* at 819 (footnote and itals. omitted). The court concluded that "physical" had to be given meaning such that "physical loss or damage generally requires some sort of physical invasion, however minor." *Id.* at 824. The court distinguished Infogroup's reliance on cases allowing loss of use of property to satisfy a physical loss of property requirement where those cases "includ[ed] some sort of actual precipitating physical even[t] that renders the building in question unusable." *Id.* (distinguishing *Murray v. State Farm Fire and Casualty Co.*, 509 S.E.2d 1, 5 (W. Va. 1998) (holding loss of use found when insureds were compelled to leave homes due to threat of falling rocks after nearby homes were harmed by falling rocks), and *Hughes v. Potomac Insurance Co. of District of Columbia*, 18 Cal. Rptr. 650, 655 (Ct. App. 1962) (holding house unusable and suffered physical loss when backyard fell away in landslide, leaving house perched on the edge of a cliff, despite no structural damage to the house itself)). Where Infogroup was not forced to leave its building because of imminent physical damage from flooding or contamination from air or water pollution, the court concluded that the "mere loss of use does not constitute physical loss or damage under the Extra Expense Clause." *Id.* at 825.

"Physical" has to mean something. *See Boelman*, 826 N.W.2d at 502 ("We will not interpret an insurance policy to render any part superfluous, unless doing so is reasonable and necessary to preserve the structure and format of the provision."). Based on our prior cases addressing the meaning of "physical" in the context of property damage or loss, we agree with the conclusion reached in

*Infogroup* that Iowa law requires there to be a physical aspect to the loss of the property to satisfy the requirement for a "direct physical loss of or damage to property" included in Wakonda Club's policy. This interpretation is consistent with, and distinguishes Wakonda Club's case from, those cases recognizing that contamination can cause a direct physical loss of property as long as the contamination is physical in nature; this includes contamination such as the release of asbestos fibers, *see Sentinel Mgt. Co. v. N.H. Ins.*, 563 N.W.2d 296, 298, 300 (Minn. Ct. App. 1997) (concluding that the release of asbestos fibers caused by "abrasions from normal residential and building maintenance activities" in apartment buildings demonstrated a direct, physical loss to property under an all-risk insurance policy); pesticides used in grain that were not harmful but also not approved by the FDA, *see Gen. Mills, Inc. v. Gold Medal Ins.*, 622 N.W.2d 147, 152 (Minn. Ct. App. 2001) (determining that General Mills' inability to use contaminated oats supported a finding of physical damage); benzene-contaminated carbon dioxide used to carbonate beverages, *see Nat'l Union Fire Ins. Co. of Pittsburgh v. Terra Indus., Inc.*, 346 F.3d 1160, 1162–63, 1165 (8th Cir. 2003) (applying Iowa law and concluding insured who sold benzene-contaminated carbon dioxide to beverage manufacturers had coverage under liability policy limiting property damage to "physical injury" to the beverages); or the smell of methamphetamine from a neighboring house, *see Farmers Ins. Co. of Or. v. Trutanich,* 858 P.2d 1332, 1335 (Or. Ct. App. 1993) (rejecting insurer's argument that "defendant's losses caused by odor from the methamphetamine 'cooking' [did not] constitute[] 'direct physical loss' within the

meaning of the policy" where "the trial court made a finding that 'a pervasive odor persists in the house,'" satisfying the requirement that the loss be physical).

The mere loss of use of property, without more, does not meet the requirement for a direct physical loss of property. *See Source Food Tech., Inc. v. U.S. Fid. & Guar. Co.*, 465 F.3d 834, 838 (8th Cir. 2006) (rejecting claim for loss of use of beef cattle that could not be transported from Canada due to border closing following an outbreak of mad cow disease where insured's property—the cattle—were not infected and explaining that interpreting Source Food's inability to transport its beef product across the border as direct physical loss would "render the word 'physical' meaningless"); *Pentair, Inc. v. Am. Guarantee & Liab. Ins.*, 400 F.3d 613, 615–18 (8th Cir. 2005) (rejecting argument that a manufacturer's supplier suffered a "physical loss of use" of its factory from a power outage that had no physical impact other than to prevent its operation and distinguishing *Sentinel* and *General Mills*, where the insureds' respective properties were physically contaminated by a release of asbestos fibers or by application of a pesticide); *see also Universal Image Prod., Inc. v. Chubb Corp.*, 703 F. Supp. 2d 705, 710 (E.D. Mich 2010) (finding no direct physical loss when the insured party failed to demonstrate any "structural or any other tangible damage to the insured property" but instead relied on intangible harms); *cf. Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins.*, 17 F. Supp. 3d 323, 330 (S.D.N.Y. 2014) (finding that physical damage need not be "tangible, structural, or even visible" but instead requires a physical element in the form

16

of invasion by fumes or contamination of water or a "palpable future risk of physical damage"). While Wakonda Club is correct that "physical loss of" property is distinct from "damage to" property, "even a distinct definition of 'loss' must be 'physical' under the Policy language." *Lisette Enters., Ltd. v. Regent Ins.*, 537 F. Supp. 3d 1038, 1045 (S.D. Iowa 2021). Although "loss of use may, in some cases, entail a physical loss," "loss of use" and "physical loss" are not synonymous, and both "physical" and "loss of use" must be given effect. *Infogroup, Inc.*, 147 F. Supp. 3d at 825.

Our conclusion that there must be a physical element to trigger the Business Interruption coverage is further supported by reviewing the Coverage Part as a whole. *See Boelman*, 826 N.W.2d at 501 ("We read the policy as a whole when determining whether the contract has two equally plausible interpretations, not seriatim by clauses."). The Business Interruption coverage is provided for a specific timeframe: during "the period of restoration." The "period of restoration" begins seventy-two hours after the "direct physical loss or damage" or "[i]mmediately after the time of direct physical loss or damage for Extra Expense Coverage" and ends on "[t]he date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality" or "[t]he date when business is resumed at a new permanent location." As the United States Court of Appeals for the Eighth Circuit explained in *Oral Surgeons, P.C., v. Cincinnati Insurance Company*, "[t]hat the policy provides coverage until property 'should be repaired, rebuilt or replaced' or until

business resumes elsewhere assumes physical alteration of the property, not mere loss of use." 2 F.4th 1141, 1144 (8th Cir. 2021) (applying Iowa law).

We return to Wakonda Club's allegation of the facts, construing them in the light most favorable to Wakonda Club, to determine whether Wakonda Club has provided evidence that its operations were suspended due to a "direct physical loss of" its property, specifically looking for a physical element to Wakonda Club's claimed loss of its property. Wakonda Club affirmatively disavowed any knowledge that the COVID-19 virus was ever on its premises or carried by any of its employees or members. While Wakonda Club may be in a catch-22 on this point—trying to avoid the virus exclusion in its policy—its concession removes even any potential physical element to the loss of the use of its property, distinguishing its claim from those in the cases it relies on. *Cf. Studio 417, Inc. v. Cincinnati Ins.*, 478 F. Supp. 3d 794, 802 (W.D. Mo. 2020) (denying motion to dismiss, explaining that "the presence of COVID-19 on premises, as is alleged here, is not a benign condition" and stating that "[r]egardless of the allegations in . . . other cases, Plaintiffs here have *plausibly alleged that COVID-19 particles attached to and damaged their property*, which made their premises unsafe and unusable" (emphasis added)); Knutsen & Stempel, 27 Conn. Ins. L.J. at 247 (describing cases allowing business interruption claims to go forward as relying on allegation of physical presence of the virus to make the "analytical difference in proving coverage through a 'direct physical loss' ").

The possibility of the COVID-19 virus being present in Wakonda Club's facilities is insufficient to trigger coverage for Wakonda Club's suspension of operations during the time it was closed or operated at limited capacity. Proclamations like the one issued by Governor Reynolds were triggered by attempts to stop the spread of the COVID-19 virus, not because facilities like Wakonda Club were in imminent danger of physical harm that would cause a loss of the property. The closures are unlike the physical threat cases because there was no imminent physical threat to the insured's property. *Compare Infogroup, Inc.*, 147 F. Supp. 3d at 824 (holding no direct physical loss of use from only a possibility of flooding), *with Murray*, 509 S.E.2d at 5, 17 (holding physical loss of use found when insureds were compelled to leave homes due to threat of falling rocks after nearby homes were harmed by falling rocks), *and Hughes*, 199 Cal. App. 2d at 248–49 (holding house unusable and suffered physical loss when backyard fell away in landslide, leaving house perched on the edge of a cliff, despite no structural damage to the house itself). Wakonda Club's reliance on the mere loss of use of its property without a physical element to that loss defeats its claim.

While our decision today rests upon our interpretation of Iowa law and the specific language of the provisions at issue, we note that every federal appellate court that has addressed the same or very similar language has likewise held that the mere loss of use of property due to government orders made in response to the COVID-19 pandemic does not constitute "direct physical loss" of the

insured's property.[3] Likewise, federal district courts interpreting Iowa law have held the same.[4] And, to date, all state appellate courts that have addressed the issue also hold that loss of use due to government orders in response to the COVID-19 pandemic does not result in physical loss of property.[5]

---

[3]*See, e.g.*, *10012 Holdings, Inc. v. Sentinel Ins.*, 21 F.4th 216, 220–23 (2d Cir. 2021) (holding that loss of use of art gallery was not "direct physical loss" or "physical damage" necessary for coverage); *Uncork & Create LLC v. Cincinnati Ins.*, 27 F.4th 926, 933–34 (4th Cir. 2022) (holding that insured's inability to operate art studio due to closure order related to the COVID-19 pandemic did not qualify as "physical loss" or "physical damage" to covered property); *Q Clothier New Orleans, L.L.C. v. Twin City Fire Ins.*, 29 F.4th 252, 259 (5th Cir. 2022) (holding that losses incurred by men's clothing store owners by closure orders related to the COVID-19 pandemic did not amount to "direct physical loss of or damage to property"); *Santo's Italian Café LLC v. Acuity Ins.*, 15 F.4th 398, 401 (6th Cir. 2021) (holding that losses caused by Ohio's shutdown orders did not qualify as "direct physical loss of property" or "damage to property"); *Sandy Point Dental, P.C. v. Cincinnati Ins.*, 20 F.4th 327, 335 (7th Cir. 2021) (holding that insured dentist office did not sustain "direct physical loss" when it suspended services); *Oral Surgeons, P.C. v. Cincinnati Ins.*, 2 F.4th 1141, 1144–45, 1145 n.3 (8th Cir. 2021) (holding that the plain meaning of "physical loss" does not encompass pandemic-related closures but instead requires tangible alteration to property); *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 892 (9th Cir. 2021) (holding that shelter-in-place orders did not cause insured to suffer "direct physical loss"); *Goodwill Indus. of Cent. Okla., Inc. v. Phila. Indem. Ins.*, 21 F.4th 704, 710 (10th Cir. 2021) (holding that insured did not suffer a "direct physical loss" of property when it suspended operations in compliance with state and local shutdown orders); *Gilreath Fam. & Cosm. Dentistry, Inc. v. Cincinnati Ins.*, No. 21–11046, 2021 WL 3870697, at *2 (11th Cir. Aug. 31, 2021) (per curiam) (holding that a "shelter-in-place order . . . did not damage or change the property in a way that required its repair or precluded its future use for dental procedures").

[4]*See, e.g.*, *Gerleman Mgmt., Inc. v. Atl. States Ins.*, 506 F. Supp. 3d 663, 670 (S.D. Iowa 2020) (holding that insured party failed to allege direct physical loss of or damage to insured property as a result of COVID-19 pandemic and resulting restrictions on restaurants imposed by a government order); *Palmer Holdings & Invest., Inc. v. Integrity Ins.*, 505 F. Supp. 3d 842, 854–55 (S.D. Iowa 2020) (holding that insured restaurant operators failed to allege "direct physical loss of or damage to property" as a result of COVID-19 shutdown order, as required for coverage under business income and extra expense provisions of policy); *Whiskey River on Vintage, Inc. v Ill. Cas. Co.*, 503 F. Supp. 3d 884, 897–98 (S.D. Iowa 2020) (holding that insured party failed to allege "direct physical loss of or damage to property," as required for coverage under business income or extra expense provision).

[5]*See, e.g.*, *Inns by the Sea v. Cal. Mut. Ins.*, 286 Cal. Rptr. 3d 576, 591–93 (Ct. App. 2021) ("Inns has not alleged 'direct physical loss of' property based on the fact that it lost the ability to use its physical premises to generate income."); *Ind. Repertory Theatre v. Cincinnati Cas. Co.*, 180 N.E.3d 403, 410–11 (Ind. Ct. App. 2022) (holding that loss of use of the theater alone was not enough to satisfy the "physical loss damage" requirement in the policy); *Gavrilides Mgmt. Co. v. Mich. Ins.*, No. 354418, 2022 WL 301555, at *6 (Mich. Ct. App. Feb. 1, 2022) (per curiam) (holding that the plaintiff did not allege direct physical loss or damage to their property where the plaintiff only alleged partial or complete closure by executive order).

For the foregoing reasons, we affirm the district court's order granting Selective's motion for summary judgment on the basis that Wakonda Club cannot show it suffered "direct physical loss of or damage to" its business property.

B.

Wakonda Club also argues it maintained a reasonable expectation of coverage under the circumstances. We recognize the doctrine of reasonable expectations for insured parties. *Clark-Peterson Co. v. Indep. Ins. Assoc.*, 492 N.W.2d 675, 677 (Iowa 1992) (en banc). Applicability of this doctrine turns on proof that (1) an ordinary layperson would misunderstand the policy's coverage or (2) circumstances attributable to the insurer fostered coverage expectations. *Id.* We may also apply the doctrine if the provision "(1) is bizarre or oppressive, (2) eviscerates terms explicitly agreed to, or (3) eliminates the dominant purpose of the transaction." *Id.* (quoting *Aid (Mut.) Ins. v. Steffen*, 423 N.W.2d 189, 192 (Iowa 1988)). We do not need to find ambiguity in the insurance policy before applying this doctrine. *See C & J Fertilizer, Inc. v. Allied Mut. Ins.*, 227 N.W.2d 169, 176 (Iowa 1975) (en banc).

Wakonda Club maintains that it purchased coverage for the explicit purpose of insuring its loss of profits in the event of the suspension of the business operations. According to Wakonda Club, an ordinary layperson would not easily understand the "loss" versus "damage" language. As the district court recognized, this is nothing more than a rehash of Wakonda Club's arguments on the merits of the coverage provisions. Whether or not a layperson would

understand the difference between "loss" and "damage," Wakonda Club purchased commercial property insurance that included a business interruption endorsement. The Business Income endorsement's explicit requirement that the loss be a direct physical loss defeats any expectation that the policy provided coverage for any business interruption untethered from a physical loss of the property. *See, e.g., Real Hosp., LLC v. Travelers Cas. Ins. Co. of Am.*, 499 F. Supp. 3d 288, 294 n.9 (S.D. Miss. 2020) ("One does not buy simply 'business interruption insurance.' Policyholders are not insuring against 'all risks' to their income—they are insuring against 'all risks' to their property—that is, the building and its contents."). The district court properly granted summary judgment on Wakonda's reasonable expectations claim. *See Boelman*, 826 N.W.2d at 506 ("[T]he Boelmans have presented no evidence of (1) representations made by Grinnell Mutual, which might have fostered expectations, or (2) reliance by the Boelmans on any such representations. Thus, there is no genuine issue of material fact concerning the application of the doctrine.").

## III.

For the reasons stated, we affirm the district court's order granting summary judgment in Selective's favor.

**AFFIRMED.**