NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0234n.06

Case No. 21-4148

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| HENDERSON ROAD RESTAURANT SYSTEMS, INC., DBA HYDE PARK GRILLE; COVENTRY RESTAURANT SYSTEMS, INC., DBA HYDE PARK CHOP HOUSE; CHAGRIN RESTAURANTS, LLC, DBA HYDE PARK PRIME STEAK HOUSE; JR PARK, LLC, DBA HYDE PARK PRIME STEAK HOUSE; HP CAP, LLC, DBA HYDE PARK PRIME STEAK HOUSE; NSHP, LLC, DBA HYDE PARK PRIME STEAK HOUSE; HPD RESTAURANT SYSTEMS, INC., DBA HYDE PARK PRIME STEAK HOUSE; 457 HIGH STREET DEVELOPMENT, LLC; RJ MORELAND HILLS, LLC; CAP RESTAURANT DEVELOPMENT, LLC; NORTHVILLE DEVELOPMENT, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **FILED** Jun 13, 2022 DEBORAH S. HUNT, Clerk |

<table>
<tr><td rowspan="3">Plaintiffs-Appellants,<br><br>v.<br><br>ZURICH AMERICAN INSURANCE COMPANY,<br><br>Defendant-Appellee.</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td></tr>
</table>

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

O P I N I O N

Before: BOGGS, COLE, and GRIFFIN, Circuit Judges.

COLE, Circuit Judge. Plaintiffs own and operate restaurants in Ohio, Indiana, Florida, Michigan, and Pennsylvania. After the governments of these states issued orders restricting the in-person operations of restaurants to curb the spread of COVID-19, plaintiffs closed their Ohio restaurants and suffered significant financial losses. Plaintiffs filed a claim with Zurich American

Insurance Company under their commercial insurance policy to recover the lost business income they attributed to these orders. Under this policy, Zurich would compensate plaintiffs for lost business income if plaintiffs suffered "direct physical loss of or damage to" their covered properties. According to Zurich, plaintiffs had not suffered physical loss or damage to their property. For this reason, Zurich denied plaintiffs' claims.

Plaintiffs filed suit against Zurich, arguing these pandemic-related losses were compensable under the policy and that Zurich denied their claim in bad faith. Zurich and plaintiffs then filed cross-motions for summary judgment. The district court initially found that, under Ohio law, "direct physical loss" to property also covered the loss of use of a property, as plaintiffs alleged. But Zurich appealed, and we vacated the district court's order and remanded for reconsideration in light of our decision in *Santo's Italian Café LLC v. Acuity Ins. Co.*, 15 F.4th 398 (6th Cir. 2021). The district court ultimately found that *Santo's* controlled, and, because plaintiffs only alleged a loss of use of property rather than a loss of or damage to their property, summary judgment in favor of Zurich Insurance was warranted. Plaintiffs timely appealed. We affirm.

## I. BACKGROUND

### A. Factual Background

Plaintiffs are business entities and affiliates of Hyde Park Restaurant Group that operate restaurants in Ohio, Pennsylvania, Michigan, Indiana, and Florida These restaurants were covered by Zurich American Insurance Company commercial property insurance Policy No. CPO 6220911-06 (the "policy"). Like other restaurants, plaintiffs' operations were economically affected by the COVID-19 pandemic. The stay-at-home orders implemented in the states where plaintiffs operated their restaurants curtailed access to plaintiffs' businesses and restricted in-person activities at their facilities. Although there was no physical damage to plaintiffs' properties,

and no cases of COVID-19 were traced back to plaintiffs' restaurants, the orders nonetheless caused plaintiffs financial harm.

Plaintiffs submitted a claim for reimbursement to Zurich. The claim hinged on the policy's "Business Income" provision, which provides:

> We will pay for the actual loss of **"business income"** you sustain due to the necessary **"suspension"** of your **"operations"** during the **"period of restoration"**. The **"suspension"** must be caused by direct physical loss of or damage to property at **"premises"** at which a Limit of Insurance is shown on the Declarations for Business Income. The loss or damage must be directly caused by a **"covered cause of loss"**.

(Policy, R. 12-1, PageID 276.)

In other words, unless a "loss" occurs, plaintiffs' insurance will not cover lost business income. Those words in bold have "special meaning" and are defined by the policy. (*Id.* at PageID 182.) Other words or phrases—like "direct physical loss of or damage to property"—are instead "intended to have their ordinary or common meaning." (*Id.*) The policy provides that any disputes regarding these words are to be resolved using the most recent edition of Webster's Unabridged Dictionary. (*Id.*).

Zurich denied plaintiffs' claims because it contended that there "[did] not appear to be any claim for direct physical loss of or damage to property at [plaintiffs'] premises."

**B. Procedural History**

Plaintiffs filed suit against Zurich. In Count I, plaintiffs alleged that Zurich breached its contract with plaintiffs by failing to provide them with coverage. In Count II, they contended that Zurich denied plaintiffs' claim in bad faith. Finally in Count III, plaintiffs sought a declaratory judgment as to plaintiffs' rights under the policy. Zurich and plaintiffs cross-moved for summary judgment on all three counts.

The district court found that, under Ohio law, the policy was "ambiguous" and "susceptible of more than one interpretation." *Henderson Rd. Rest. Sys., Inc. v. Zurich Am. Ins. Co.*, 513 F. Supp. 3d 808, 820–22 (N.D. Ohio 2021) ("*Henderson I*"), *vacated and remanded by In re Zurich Am. Ins. Co.*, No. 21-0302, 2021 WL 4473398 (6th Cir. Sept. 29, 2021). Construing the policy liberally, as Ohio law requires, the district court concluded that the policy could provide coverage for plaintiffs' lost business income. *Henderson I*, 513 F. Supp. 3d at 822. Accordingly, while the district court did not find that Zurich had denied plaintiffs' claim in bad faith, it did grant summary judgment to plaintiffs on Counts I and III. *Id.* at 828.

But the district court also recognized that Count I "involve[d] a controlling question of law as to which there [was] substantial ground for difference of opinion," and that "an immediate appeal from [its] order may materially advance the ultimate termination of the litigation[.]" *Id.* Thus, the district court certified the order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). *Id.*

We granted permission to appeal. *In re Zurich Am. Ins. Co.*, 2021 WL 4473398, at *1. In doing so, we recognized that the law had already been clarified in the time between *Henderson I* and our order granting permission to appeal. *Id.* In *Santo's*, we held that "'a pandemic-triggered government order, barring in-person dining at a restaurant' does not qualify as "'direct physical loss of or damage to" the property' under Ohio law." *Id.* at *1 (quoting *Santo's*, 15 F.4th at 401). Consequently, we vacated the district court's order as to Counts I and III and remanded for further proceedings. *Id.* at *2.

After supplemental briefing and further review, the district court granted summary judgment in favor of Zurich on Counts I and III. *Henderson Rd. Rest. Sys., Inc. v. Zurich Am. Ins.*

*Co.*, -- F. Supp. 3d. --, 2021 WL 5085283, at \*1 (N.D. Ohio Nov. 2, 2021) ("*Henderson II*"). Plaintiffs appeal.

## II. ANALYSIS

We review an order granting summary judgment de novo, viewing the evidence and drawing all reasonable inferences in favor of the non-moving party. *Franklin Am. Mortg. Co. v. Univ. Nat'l Bank of Lawrence*, 910 F.3d 270, 275 (6th Cir. 2018); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

Operating under diversity jurisdiction, we must apply "the law of the state's highest court." *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir. 1995) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)). The parties agree that Ohio law applies. Under Ohio law, when interpreting an insurance contract, courts apply the normal contract construction principles that govern any other type of contract. *St. Mary's Foundry, Inc. v. Emps. Ins. Of Wausau*, 332 F.3d 989, 992 (6th Cir. 2003). Ohio courts "first determine whether contract terms are ambiguous." *Id*. If a term is "reasonably susceptible of more than one meaning," then it is ambiguous. *Id.* If the terms are not ambiguous, the court determines the meaning of the contract by giving the terms within the contract "their plain and natural meaning." *Id.*

The Ohio Supreme Court has not yet opined on the question of what "direct physical loss of or damage to property" means. We, however, recently examined nearly identical policy language under Ohio law, specifically with regard to the COVID-19 pandemic. "Relying on dictionaries, a leading treatise, and Ohio intermediate-appellate-court precedent," we concluded that the unambiguous policy language required a plaintiff to demonstrate "either destruction of the property or the owner's dispossession to show 'loss' and a direct physical alteration of the property to show 'damage.'" *Dakota Girls, LLC v. Phila. Indem. Ins. Co.*, 17 F.4th 645, 649 (6th Cir. 2021)

(quoting *Santo's*, 15 F.4th at 402–04). We concluded that loss of use alone does not meet this requirement under Ohio law. *Id.*

Because *Santo's* controls, our inquiry should end here. But despite the overwhelming[1] tide of case law that stands against their argument, plaintiffs insist that their policy is distinguishable, and the definition of "direct physical loss of or damage to" illustrated by *Santo's* does not apply. Specifically, unlike the policy in *Santo's*, plaintiffs' policy requires that disputes over language are to be resolved by reference to Webster's Unabridged Dictionary. Following Webster's, plaintiffs argue that they were "deprived . . . of their ability to use the Insured Premises for in-person dining." (Appellant Br. 13.) According to plaintiffs', this means that they "lost" their property because they lost "the right under the[ir] leases to 'enjoy' operating the Insured Premises as fine dining establishments with in-person dining." (Appellant Br. 14.)

Webster's defines property, relevantly, as "something that is or may be owned or possessed: . . . a piece of real estate," or "the exclusive right to possess, enjoy, and dispose of a thing[.]" *Property*, *Merriam-Webster's Unabridged Dictionary* (2022). "Loss" is defined as "the act or fact of losing: failure to keep possession: deprivation[.]" *Loss*, *Merriam-Webster's Unabridged Dictionary* (2022). "Physical" is defined as "relating to natural or material things as

---

[1] *See 10012 Holdings, Inc. v. Sentinel Ins. Co.*, 21 F.4th 216, 220–21 (2d. Cir. 2021) (concluding "direct physical loss" requires physical damage, rather than mere loss of use, under New York law); *Uncork & Create LLC v. Cincinnati Ins. Co.*, 27 F.4th 926, 933 (4th Cir. 2022) (same, under West Virginia law); *Terry Black's Barbecue, L.L.C., v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 456–57 (5th Cir. 2022) (same, under Texas law); *Estes v. Cincinnati Ins. Co.*, 23 F.4th 695, 700 (6th Cir. 2022) (same, under Kentucky law); *Brown Jug v. Cincinnati Ins. Co.*, 27 F.4th 398, 403 (6th Cir. 2022) (same, under Michigan law); *Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*, 20 F.4th 327, 333 (7th Cir. 2021) (same, under Illinois law); *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141, 1144 (8th Cir. 2021) (same, under Iowa law); *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 890–92 (9th Cir. 2021) (same, under California law); *Goodwill Indus. of Cent. Okla., Inc. v. Phila. Indem. Ins. Co.*, 21 F.4th 704, 710–11 (10th Cir. 2021) (same, under Oklahoma law); *Gilreath Fam. & Cosm. Dentistry, Inc. v. Cincinnati Ins. Co.*, No. 21-11046, 2021 WL 3870697, at *2 (11th Cir. Aug. 31, 2021) (per curiam) (holding that neither the state's shelter in place orders nor any alleged COVID-19 particles in the air caused physical damage necessary to recover under the policy under Georgia law); *Verveine Corp., et al. v. Strathmore Ins. Co., et al.*, 184 N.E.3d 1266, 1277 (Mass. 2022) (same, under Massachusetts law).

opposed to things mental, moral, spiritual, or imaginary." *Physical*, *Merriam-Webster's Unabridged Dictionary* (2022).

These definitions do not differ materially from the Oxford English Dictionary definitions relied on in *Santo's*. There, we noted that

> "Direct" means "[e]ffected or existing without intermediation or intervening agency; immediate." *Oxford English Dictionary Online* (3d ed. 2021). "Physical" means "natural; tangible, concrete." *Id.* "Loss" means "[p]erdition, ruin, destruction; the condition or fact of being 'lost,' destroyed, or ruined," or "being deprived of." *Id.* And "property" means "any residential or other building (with or without associated land) or separately owned part of such building (as an apartment, etc.)," as well as "[s]omething belonging to a thing; an appurtenance; an adjunct." *Id.*

*Santo's*, 15 F.4th at 401. Regardless of whether "loss" means "deprivation" or "failing to keep possession" or whether "property" includes leaseholds or buildings, this court has squarely determined that "'direct physical loss of' property does not mean what [plaintiffs] say[] it means. It refers to direct physical loss of property, not the inability to use property." *Id.* at 405. The Webster's definitions do not compel a different conclusion.

Plaintiffs contend that, because there are multiple definitions of the contested terms within the dictionary, the contract is ambiguous. Multiple definitions alone do not render a contract ambiguous. "In determining whether contractual language is ambiguous, the contract must be construed as a whole." *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 763 (6th Cir. 2008) (quotation omitted). Given that plaintiffs may only recover business income "lost" during the "period of restoration," it is worth exploring the definition of that term as well. The policy provides that "'**[p]eriod of restoration'** means the period of time that begins when: . . . [t]he direct physical loss or damage that causes **'suspension'** of . . . **'operations'** occurs[.]" (Policy, 12-1, PageID 202.) This period ends on the earlier of:

> **a.** The date when the location where the loss or damage occurred could have been physically capable of resuming the level of **"operations"** which existed prior to the loss or damage, if the location had been restored to the physical size, construction, configuration, location, and material specifications which would satisfy the minimum requirements necessary to obtain all required building permits, occupancy permits, operating licenses, or similar documents; or
>
> **b.** The date when a new permanent location is physically capable of resuming the level of **"operations"** which existed prior to the loss or damage, if you resume **"operations"** at a new permanent location.

(*Id.*)

The "period of restoration" provision makes clear that the policy contemplates physical damage or alteration to the property or premises, rather than a mere loss of use. While plaintiffs argue that the lifting of a government restriction is the same as obtaining permits, licenses, or registrations, this reading ignores the beginning of the sentence. The period of restoration ends when a property is "physically capable" of resuming operations, if the existing location is "restored" to a condition that allows it to legally operate. (*Id.*) The suspension of a government order, without a demonstration of "loss" or "damage," would not qualify.

At no point were plaintiffs deprived of "the exclusive right to possess, enjoy, [or] dispose of" their properties, nor did the orders in anyway affect their "possession" of the property—whether that be defined as the physical buildings or their leaseholds. *Property*, *Merriam-Webster's Unabridged Dictionary* (2022). Plaintiffs admitted that they were permitted to operate their restaurants, albeit in a limited capacity, throughout the duration of the orders. Plaintiffs also acknowledge that their properties were not physically damaged because of the pandemic or the government orders. Rather, they were deprived only of their ability to *use* the property as they wished. While the exact definitions relied on in *Santo's* may not apply to plaintiffs' policy, its underlying conclusion still does: "a loss of use simply is not the same as a physical loss." *Santo's*, 15 F.4th at 402.

## III.  CONCLUSION

For the foregoing reasons, we affirm.